337 So.2d 432 (1976)
W. B. NORTON
v.
Charles A. ADDIE.
No. 57490.
Supreme Court of Louisiana.
September 13, 1976.
*434 Dale G. Cox, Nelson & Achee, Ltd., Shreveport, for plaintiff-applicant.
Nolan Harper, Shreveport, for defendant-respondent.
DENNIS, Justice.
This possessory action was brought by W. B. Norton against his neighbor Charles A. Addie as a result of a dispute over the common boundary between their properties in Caddo Parish. Norton claims that the northern boundary of his property is marked by a fence line which has been in place and maintained by himself and his ancestors in title since 1904. Addie, on the other hand, places the boundary approximately 114 feet south of the fence line at the south line of Section 16, Township 23 North, Range 15 West, as shown by a survey of his property made by Ben E. Ramsey, a civil engineer. The subject of this dispute is the approximately forty acres lying between these two lines, and described in plaintiff's supplemental petition as:
"[S]tarting at a point which Mr. Addie considers to be the southwest corner of the southeast quarter (SE ¼) of the southeast quarter (SE ¼) of Sec. 16, then run approximately 114' north to a fence that has been in place since 1904 and maintained by the Nortons, then approximately 1320' east along this fence, then south approximately 158' then west approximately 1358' to the point of beginning."
Several months prior to the filing of this suit Addie filed a boundary action asking for a judicial determination of the boundary between their respective lands. Addie also obtained a preliminary injunction preventing Norton from cutting the timber on the disputed tract. Plaintiff contends that he was in possession of the above described property at the time this action was filed and had been in possession for more than a year; and that defendant, Addie, disturbed his possession by having him enjoined from cutting the timber on this property.
Addie filed an answer and reconventional demand in which he denied Norton's possession of the disputed area and asserted his own possession of the tract in question since his acquisition of title to the SE ¼ of the SE ¼ of Section 16 in May, 1962. Addie further alleged that plaintiff recently disturbed his possession by constructing a barbed wire fence through a portion of the SE ¼ of the SE ¼ which is owned and possessed by him. He also sought damages because of this disturbance of his possession by plaintiff.
The trial court rejected Norton's demands and rendered judgment in favor of Addie on his reconventional demand maintaining *435 his possession of the disputed area and ordering Norton to assert any adverse claim of ownership in a petitory action within sixty days. The court further awarded Addie damages in the amount of $450.00.
The court of appeal found that Addie failed to show that he or his ancestors in title ever had corporeal possession of the disputed area and rejected his demands against Norton, reversing the judgment in his favor. However, it also found that Norton had not been in quiet possession of the subject property for more than a year prior to the bringing of the possessory action, as required by La.Code of Civil Procedure article 3658, and therefore affirmed the decision of the lower court insofar as it rejected Norton's demands against Addie. The court of appeal appeared to consider it fatal to Norton's case that he had refrained from cutting timber in the disputed area and had acknowledged the boundary was uncertain. 324 So.2d 497 (La.App. 2d Cir. 1975). We granted writs to consider whether this holding was in conflict with our decision in Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975).
In 1904, Norton's father bought and settled on land located in Section 22, Township 23 North, Range 15 West, which lies south of and adjacent to Section 16. In that year he built a fence establishing the line which defendant alleges encroaches upon his property. The original fence was replaced by plaintiff in 1923, and terraces were built up to the fence line to prevent erosion of the soil. In 1968, plaintiff leased 160 acres of pastureland, including the tract in dispute, to Willis T. LaRue. LaRue testified that the fence was old but functional and prevented his cattle from escaping except in isolated instances. Both LaRue and plaintiff's brother, W. D. Norton, testified that they visited the property frequently and checked the fence regularly, mending it in places where it broke. When the fence was inexplicably destroyed in 1974, plaintiff replaced it with a new fence.
Apparently both the trial court and the court of appeal placed considerable significance in the fact that no timber had been cut in the disputed area since approximately 1925 although plaintiff at that time sold the timber from his entire tract, including the disputed acreage, up to the fence line. Defendant's witnesses testified that Norton had blazed a line indicating where he thought the true boundary lay and did not cut any timber beyond this point. W. D. Norton confirmed that plaintiff had not wished to cut into the disputed portion until the boundary line was settled. Paul Whetstone testified that he had a contract to cut timber on the land of Cordell Brown, and that plaintiff had likewise instructed him not to cut the timber between the blazed line and the fence. Inconsistent with this testimony is Addie's statement that plaintiff, in a conversation with him which apparently occurred in 1962, said of the subject property, "* * * I know that ain't mine, and I don't want nothing that ain't mine." (Tr., p. 81).
To maintain the possessory action, Article 3658 of the La.Code of Civil Procedure provides that the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
The type of possession required for a possessory action is identical to that required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975); Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). The Louisiana Civil Code defines possession as "the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name." La.C.C. art. 3426. Natural possession, which may exist without title, is the corporeal detention *436 of a thing, as by occupying a house or cultivating ground. La.C.C. arts. 3428 and 3430. To acquire possession of property one must combine the intention of possessing as owner with the corporeal detention of the thing. Where a person claims by possession alone and without title the courts have required that he show an adverse possession by enclosures; "enclosures" in this sense are natural or artificial marks which give notice of the character and extent of possession. Hill v. Richey, supra.
The evidence in this case establishes that plaintiff, preceded by his father, had possessed the property in question for many years prior to the institution of this action. The exercise of exclusive grazing privileges over the land, accompanied by the maintenance of the enclosures constituted corporeal possession over the entire tract.
Willis LaRue, who leased the land from plaintiff for pasturage, possessed on behalf of his lessor. La.C.C. arts. 3438 and 3445. Witnesses for defendant asserted that the fence had been neglected over the years and was in a state of disrepair. But this testimony, if true, would not derogate from the proof of plaintiff's possession. The witnesses concede that the fence, or remains of it, was clearly visible along the old fence line. This was sufficient to give defendant notice of the limits of plaintiff's continuing possession. See Robertson v. Morgan, 116 So.2d 141 (La.App. 1st Cir. 1959).
Defendant maintains that because he holds a deed translative of title any act of possession on part of his land amounts to constructive possession of the whole and he is presumed to possess to the full extent of his title. La.C.C. arts. 3437, 3498, Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949). However, the constructive possession of Addie and his ancestors in title was lost by the corporeal detention of the property by the Nortons beginning in 1904. By permitting their usurpation to continue without interference, Brown and subsequently Addie, lost constructive possession of the tract. See Robertson v. Morgan, supra, La.C.C. art. 3449. As the court of appeal noted, the only physical use of the property by Addie has been his occasional hunting on it, and this is insufficient to establish his corporeal possession of the property or to interrupt plaintiff's possession.
The court of appeal found that Norton's use of the property was not "sufficient to overcome other evidence in the record which shows Norton did not consider himself to be in undisturbed possession of this disputed area." This conclusion displays misconceptions of the means by which the possessor of an estate may lose his possession.
This Court, in Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975), cited the following pertinent authorities, observing that,
"Our Civil Code provisions make it clear that one who has acquired corporeal possession continues in possession until he transfers it or abandons it, or until another expels him from it, or until he permits the estate to be usurped and held for a year without doing any act of possession or without interfering with the usurper's possession:
"`Art. 3442. When a person has once acquired possession of a thing by the corporal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others.'
"`Art. 3443. This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of retaining it, and shall retain it in fact.'
"`Art. 3444. To retain the possession of a thing when a man once has it, it is not even necessary that he should have such positive intention; a negative intention suffices, that is, it suffices that the positive intention, which he had in acquiring *437 the possession, shall not have been revoked by a contrary intention; for, so long as this revocation does not take place, the possessor is supposed always to retain his first intention, unless a third person has usurped or taken from him the possession, or he has failed to exercise an actual possession for ten years.'
"`Art. 3447. Possession of a thing may be lost either with or without the consent of the possessor.'
"`Art. 3448. Possession is lost with the consent of the possessor:
"`1. When he transfers this possession to another with the intention to divest himself of it.
"`2. When he does some act, which manifests his intention of abandoning possession, as when a man throws into the street furniture, or clothes, of which he no longer chooses to make use.'
"`Art. 3449. A possessor of an estate loses the possession against his consent:
"`1. When another expels him from it, whether by force in driving him away, or by usurping possession during his absence, and preventing him from reentering.
"`2. When the possessor of an estate allows it to be usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper's possession.'" 319 So.2d at 774-75.
Furthermore, in Liner we also held that, under Article 3449 of the La.Civil Code, possession is not interrupted when it is "merely disturbed." A possessor does not lose possession against his consent unless he is forcibly expelled or unless the disturber usurps possession and holds it for more than a year. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766, 778 (La. 1975).
Applying these principles to the evidence in the record we conclude that Norton acquired possession of the property, never revoked his intention to possess it, and was not physically disturbed in his possession. Additionally, for the sake of clarity, we point out that even if the evidence here constituted a physical disturbance of possession, which we do not consider it to be, it fell far short of a forcible expulsion or a usurpation for more than one year.
Prior to the acts which gave rise to this suit defendant took no steps to evict plaintiff or to usurp possession for himself. Nor do we think that plaintiff manifested an intention to relinquish his possession of the property. Plaintiff's unwillingness to cut the timber in the disputed tract demonstrated ambivalence toward his right of possession at worst, and not an intention to revoke his possession. Realizing that the boundary was uncertain, he displayed an understandable and sensible hesitation to waste the resources of the disputed tract. And while he did not cut the timber for himself, neither would he permit others to do so, evidencing a proprietary interest in the land. Additionally, he leased the property for pasturage, and according to the testimony of his witnesses, maintained the fence. The only direct evidence of plaintiff's intention to abandon possession is Addie's self-serving statement that Norton, in a conversation with him several years earlier, had disclaimed his right to the property or intent to possess it. Although Norton was too ill to attend the trial and testify, the record is replete with evidence of his actions constantly displaying a contrary intention.
We conclude that plaintiff possessed the property in question quietly and without interruption for more than a year prior to the disturbance in law created by the preliminary injunction, and that he instituted this possessory action within a year of the disturbance. Therefore, we find that plaintiff has satisfied each of the requirements of article 3658, and recognize his right of possession to the following described property:
"[S]tarting at a point which Mr. Addie considers to be the southwest corner of the southeast quarter (SE ¼) of the southeast quarter (SE ¼) of Sec. 16, then run approximately 114' north to a fence that has been in place since 1904 and *438 maintained by the Nortons, then approximately 1320' east along this fence, then south approximately 158', then west approximately 1358' to the point of beginning."
Defendant is ordered to assert his adverse claim of ownership of the immovable property in a petitory action to be filed within sixty days after the date the judgment becomes executory or be precluded thereafter from asserting the ownership thereof.
Affirmed in part, reversed in part.