365 So.2d 608 (1978)
Alexie J. PLAISANCE, Sr., et al.
v.
Levy COLLINS, Jr., et al.
No. 12284.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
*610 David M. Richard, Thibodaux, for petitioners and appellees.
Emile M. Weber, Baton Rouge, for defendants and appellants.
Before LANDRY, COVINGTON and PONDER, JJ.
COVINGTON, Judge.
This is a possessory action instituted by Alexie J. Plaisance, Sr., Lester J. Plaisance, Yvette C. Egle, Debra Egle, and Diana Egle Wilson, hereinafter referred to as the "Plaisance group," on August 5, 1968, against Levy (Levi) Collins, Jr., Gibson Collins, Kirby Collins, Mrs. C. J. Theriot, Sr., and Mrs. D. W. Wilson, hereinafter referred to as the "Collins group," seeking to have recognized the plaintiffs' right to possession over a tract of land designated as Tract I, situated in the west half of the east half of Section 6, Township 20 South, Range 22 East, Lafourche Parish, Louisiana, asking for an order requiring the defendants to assert their claim of ownership in a petitory action within 60 days after the judgment becomes executory, and praying for injunctive relief.
The petition sets out that the plaintiffs possessed as owners of the disputed tract since their acquisition from La-Terre Co., Inc. by deed dated April 13, 1958, recorded May 28, 1959, in C.O.B. 251, Folio 652 of the conveyance records of Lafourche Parish; and that they and their ancestor in title had been in possession since 1927 without attempted possession or disturbance from the defendants until August 25, 1967, when the defendants disturbed their possession by constructing a barbed wire fence.
All of the land involved was formerly marsh land; but when the protective levee was constructed in 1959, most of it became dry land, overgrown with high grass. The properties of the two groups join and the land in dispute is a strip about 96 feet in width which is bounded on the north by other property of the Plaisance group, on the south and west by the canal and "protective levee" (beyond which is the property of La-Terre Co., Inc.), and on the east by Lot One and part of Lot Two of Section 6, Township 20 South, Range 22 East. The Plaisance group claims that the disputed strip of land is part of Tract I acquired from La-Terre by the 1959 deed; the Collins group claims that the disputed strip of land is part of the property acquired by Levy Collins from Alexson Anselmi by deed dated February 23, 1931. The Collins group claims their western boundary is Catfish Bay or Lake; the Plaisance group claims their eastern boundary is the "Lovell line" (a line which was surveyed for La-Terre by J. A. Lovell, Parish Surveyor).
The Collins group answered, denying the claims of the plaintiffs, and asserted their own claim of possession and alleged that the fence was constructed about July 3, 1967. They also reconvened, bringing their *611 own possessory action, alleging possession as owners through inheritance from their deceased father, Levi Collins, commencing with the date of acquisition by the senior Collins from Alexson Anselmi by deed dated February 23, 1931, recorded February 28, 1931, in C.O.B. 66, Folio 323, of the conveyance records of Lafourche Parish. They alleged disturbance by the filing of the present action by the Plaisance group on August 22, 1968 (suit actually filed on August 5, 1968), and prayed for recognition of their possession, requiring the Plaisance group to bring a petitory action in due course, and seeking injunctive relief.
Thereafter, on October 11, 1968, the trial judge granted the Plaisance group a preliminary injunction, finding from the evidence adduced at the trial on the rule that the following facts were established:
"1. The property in question is located in the Parish of Lafourche within the jurisdiction of this Court.
"2. The plaintiffs (Plaisance group) were in peaceful, open, notorious possession, as owners, of the property in question for more than a year prior to the disturbance by the defendants.
"3. The disturbance by the defendants commenced on August 24, 1967, and was a disturbance in fact by the construction of a fence on the property involved in this litigation.
"4. The petition for possession and the ancillary rule for preliminary injunction were filed on August 5, 1968, within one (1) year of the date of the disturbance."
Based upon the foregoing finding of facts, the trial judge rendered his opinion that:
"Article 3663 of the Code of Civil Procedure provides in part that a person who is disturbed in the possession which he or his ancestors in title have had for more than a year of immovable property of which he claims the ownership, the possession or the enjoyment, is entitled to injunctive relief under the applicable provisions of Chapter 2 of Title I of Book VII to protect or restore possession of immovable property to him.
"Under the facts as found by the Court and the law applicable thereto, judgment has been rendered in favor of plaintiffs granting to plaintiffs the preliminary injunction which they seek herein to restore them to possession of the subject property."
Then, after the first jury trial ended in a mistrial, the case was assigned for trial by jury again; and Steven Dale Collins, who had purchased the interest of Gibson Collins, was substituted as a party defendant and plaintiff in reconvention. Upon the death of Alexie Plaisance, Sr., his widow and heirs were substituted as parties in the suit.
Following trial by jury and the response of the jury to interrogatories, verdict was entered in favor of the Plaisance group, and judgment on the verdict was signed by the trial judge on April 6, 1978, in favor of the plaintiffs, Lester Plaisance, Yvette C. Egle, Debra Egle, Gertrude Dugas Plaisance, Alexie J. Plaisance, Jr., Kip J. Plaisance, and J. Wayne Plaisance, and against the defendants Levi Collins, Jr., Steven Dale Collins, Kirby Collins, Mr. C. J. Theriot, Sr., and Mrs. D. W. Wilson, granting the Plaisance group a permanent injunction, recognizing the plaintiffs' right to possession of the disputed property, dismissing the reconventional demand of the Collins group and ordering the defendants to assert their adverse claim of ownership to the disputed property in a petitory action to be filed within sixty days after the date the judgment becomes executory, or be forever barred from claiming ownership to the subject property, at the defendants' costs.
Subsequently, the trial attorney for defendants withdrew as counsel, and the defendants, through their present counsel, perfected a devolutive appeal to this Court.
The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. Gaulter v. Gennaro, 345 *612 So.2d 92 (La.App. 1 Cir. 1977). What constitutes possession in any case is a question of fact and each case must rest upon its own peculiar circumstances. Certainly, the landowner can only exercise over his land such possession as is practical and is reasonably contemplated from the nature of the property. Thus, the acts which must be shown to establish possession are governed to a large extent by the use to which the land is destined or for which it is suitable. The type of possession essential to maintain a possessory action for one kind of property may differ from that required for another. Obviously, the possession requisite in the case of farm land is more than in the case of wood land; and, more possession is required in the case of wood land than in the case of swamp or marsh land. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975). That there may be possession of swamp or marsh land can not be questioned. The possession of marsh land contemplated by law is that which is commensurate with its nature, its chief value, and by the extent of the operations conducted thereon which the character of the soil and surroundings may reasonably permit. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
The evidence shows that this was marsh land, suitable only for trapping up until 1959. Then, the "protective levee" was constructed. The quality of the land for trapping purposes deteriorated after the construction of the levee, because the land became drier with unfavorable conditions to sustain trapping of a commercial nature. The property between the levee and the "Lovell line" largely became overgrown with high grass. While La-Terre owned the property the company extensively and exclusively trapped the marsh land. They marked the boundaries, as evidenced by the "Lovell line," and kept "outsiders" from trapping on their property. After the Plaisances acquired the property, they maintained the boundary lines, clearing them twice a year; they have patrolled and watched after the property; they have granted mineral leases and a right-of-way to a water district to lay a water line parallel to the "Lovell line" on the property, and have paid the taxes.
The possessory action is an action brought by the possessor of immovable property to be maintained in his possession "when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." LSA-C.C.P. art. 3655. To maintain the possessory action, the possessor must allege and prove that he had possession as owner at the time of the disturbance; that he possessed quietly and uninterruptedly for more than one year immediately prior to the disturbance; that there has been a disturbance in law or in fact; and that the action was brought within one year of the disturbance. LSA-C.C.P. arts. 3656, 3658; Johnson, Guide to Louisiana Real Actions, Ten Year and Thirty Year Prescriptions 7 (1967); Riseman, The Possessory Action, 20 Tul.L.Rev. 524 (1946).
Possession necessary to maintain a possessory action must be either corporeal possession, or civil possession preceded by corporeal possession by the possessor or his ancestors in title. LSA-C.C.P. art. 3660; Liner v. Louisiana Land and Exploration Company, supra; Gaulter v. Gennaro, supra. The possessor must possess as owner, or be "one who possesses for himself", as the Code of Civil Procedure, Article 3656, expresses it. See Grant Timber & Mfg. Co. v. Gray, 131 La. 865, 60 So. 374 (1912); see also Louisiana Materials Co., Inc. v. Cronvich, 258 La. 1039, 249 So.2d 123 (1971). The possessor must have possession of the property "at the time the disturbance occurred." This, of course, does not mean that there must be some actual physical possession evidenced by some affirmative action at the exact moment at which the disturbance took place; it is not necessary that the possessor show that at that exact moment he was physically on the land doing something consistent with the nature of the land. See Whitney National Bank of New Orleans v. Munch, 91 So.2d 144 (La.App. 4 Cir. 1956). What it means is that there must have been no interruption of the possession *613 for a period of one year prior to the disturbance which caused the suit to be instituted.
This was the interpretation given by our Supreme Court in Liner v. Louisiana Land and Exploration Company, supra at 776:
"We must conclude then that the words `quietly and without interruption' do not mean that a possessor who suffers a `disturbance' on several occasions in the year preceding the suit has lost his right to bring the possessory action. The possessor may suffer disturbances throughout the year preceding the filing of the possessory action, and unless his possession comes to an end in such a way that he cannot show that he was in possession for more than a year prior to the disturbance complained of, he has the right to bring the action within a year of the disturbance.
"A disturbance might interrupt possession. It might bring a corporeal possession to an end. (If, however, the disturbance results in an eviction by force or fraud, the one year possession requirement is eliminated). A disturbance may be an eviction, but it might also be `any other physical act which prevents the possessor of immovable property or of a real right from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.' C.C.P. 3659.
"The acts of Louisiana Land and Exploration Company for the year preceding February 3, 1972 did constitute a disturbance of Liner's possession. However, he was not evicted. He and his son continued to trap on the disputed property. He continued to replace the boundary stakes removed by Louisiana Land and Exploration Company. Liner protested the August and September `invasions' by Louisiana Land and Exploration Company employees. Liner was not expelled, nor did he acquiesce in a usurpation. C.C. 3449.
"C.C.P. 3658(2) cannot, without adding a new requirement to the possessory action, be read literally. It cannot mean that there must be no adverse claim for a year before the disturbance. `Quietly' appears in C.P. 49 and may be compared to `peaceably' in C.C. 3454, subd. 2, and in contrast to the violence referred to in C.C. 3491:
"`A possession by violence, not being legal, does not confer the right of prescribing.
"`That right only commences when the violence has ceased.'
"As stated in Aubry & Rau, Supra, § 180:
"`Possession is marred by violence, that means it is not peaceful, if it was acquired and continued by acts accompanied by physical or psychological violence.32
"`32 The defect of violence presupposes that the possession is acquired by active means. If the possession originates peacefully, it does not become defective if troubles related to it are caused by third persons; but there must be no natural interruption of the possession.. . .'
"Consequently, we interpret the requirement of C.C.P. 3658(2) to mean that there must have been no interruption of the possession for one year, prior to the disturbance which caused the suit."
The Supreme Court explained further its interpretation of Article 3658(2), in its per curiam opinion on application for rehearing, as follows:
"Under the Civil Code, possession is not interrupted when it is merely disturbed. A possessor does not lose possession against his consent unless he is forcibly expelled or unless the disturber usurps possession and holds it for more than a year. See Civil Code Article 3449, which declares:
"`A possessor of an estate loses the possession against his consent:
"`1. When another expels him from it, whether by force in driving him away, or by usurping possession during his absence, and preventing him from re-entering.
"`2. When the possessor of an estate allows it to be usurped and held for a year, without, during that time, *614 having done any act of possession, or interfered with the usurper's possession.'
"Similarly, in speaking of interruption of prescription (rather than of possession) Article 3517 of the Louisiana Civil Code declares that `a natural interruption is said to take place when the possessor is deprived of the possession [enjoyment] of the thing during more than a year, either by the ancient proprietor or even by a third person'.
"Thus, an interruption of possession for purposes of the possessory action coincides with an interruption of acquisitive prescription under Article 3517 of the Civil Code. (Moreover, if so interpreted, the loss of the right to possess under Article 3449(2) of the Civil Code coincides in time with the acquisition of the right to possess by another under Articles 3454(2) and 3456 of the Civil Code.)
"We therefore conclude that one may possess quietly and without interruption for more than a year so as to be entitled to bring a possessory action, La.C.Civ.P. art. 3658(2), even though during that year disturbances in fact or law have occurred, La.C.Civ.P. art. 3659."
See also Note, 51 Tul.L.Rev. 168 (1976); Yiannopoulos, The Work of the Louisiana Appellate Courts for the 1974-75 Term Property, 36 La.L.Rev. 335, 354 (1976).
The possession required to bring a possessory action is considered as the same possession required to commence the running of acquisitive prescription. Norton v. Addie, 337 So.2d 432 (La.1976); Liner v. Louisiana Land and Exploration Company, supra. Thus, the Civil Code approach to "possession" is found in LSA-C.C. arts. 3426 and 3438 (Possession is the detention or enjoyment of a thing which a possessor exercises himself or through another person who exercises it in the possessor's behalf); LSA-C.C. art. 3427 (The two different kinds of possession are natural and civil); LSA-C.C. arts. 3428 and 3430 (Natural possession is corporeal detention, such as occupying a house or cultivating ground); LSA-C.C. arts. 3429 and 3431 (Civil possession is legal detention by virtue of title and with intent to possess as owner, such as ceasing to occupy a house or cultivate ground without intent to abandon the right of possession); and LSA-C.C. art. 3436 (Two distinct things are required in order to be able to acquire possession: intention of possessing as owner and corporeal detention of the thing). When possession is once acquired by corporeal detention, possession is preserved by the intention of possessing, although the possessor "may have ceased to have the thing in actual custody." LSA-C.C. art. 3442. The intention of retaining possession is presumed to continue until a contrary intention is definitely shown. LSA-C.C. arts. 3443 and 3444. However, a possessor may lose possession "against his consent" if he is forcibly ejected or prevented from returning or allows his property to be usurped for a year without doing "any act of possession." LSA-C.C. art. 3449. He may also lose possession by transferring or abandoning it. LSA-C.C. art. 3448.
Our Civil Code provisions make it clear that one who has acquired corporeal possession continues in possession until he transfers it or abandons it, or until another expels him from it, or until he allows the land to be usurped and held for a year without doing any act of possession or without interfering with the usurper's possession. Liner v. Louisiana Land and Exploration Company, supra.
Our Civil Code also clearly points out that corporeal detention of each foot of land by one who claims under a title is unnecessary for a possessor to have corporeal possession of the land. LSA-C.C. art. 3437. It is sufficient for a possessor to enter upon and occupy a part of the land, if he has the intention of possessing all of the land within the boundaries; it is not necessary that he "pass over every part of it." LSA-C.C. art. 3437.
Moreover, when a tract of land is acquired under a title, the corporeal possession of a part is equivalent to the possession of all the property within the limits or boundaries described in the title, LSA-C.C. *615 art. 3498; Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949); see also Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246 (1965); Leader Realty Company v. Taylor, 147 La. 256, 84 So. 648 (1920); Zeringue v. Blouin, 192 So.2d 838 (La.App. 1 Cir. 1966), writ refused, 250 La. 100, 194 So.2d 98 (1967).
In Ernest Realty Company v. Hunter Company, 189 La. 379, 179 So. 460 (1938), our Supreme Court said:
"It is a well settled and established principle of law that where the legal and rightful owner of a tract of land has actual possession of a part thereof, he is in legal and constructive possession of the whole, except such portion thereof that may be in the actual possession and occupancy, by inclosure or otherwise, of a party claiming either by title under article 3478 or thirty years' adverse possession, article 3499. The reason for the rule is that both cannot have constructive possession."
The disturbance in fact, which is applicable in the instant case since the disturbance to the Plaisance group was allegedly the construction of a fence by the Collins group, is characterized as "an eviction, or any other physical act which prevents the possessor. . . from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment." LSA-C.C.P. art. 3659.
A disturbance of possession may or may not interrupt possession, depending on the nature of the disturbance. Thus an eviction by force or fraud would interrupt possession. However, a disturbance may not deprive a person of his dominion and control over the property if it merely interferes with the right to possession or throws an obstacle in the way of the enjoyment of possession. Unless possession comes to an end in such a way that the possessor can not show that he was in possession for more than a year prior to the disturbance complained of, he has a right to bring the possessory action within a year of that disturbance. Liner v. Louisiana Land and Exploration Company, supra.
The evidence in this case establishes that the Plaisance group, preceded by its ancestor in title, La-Terre, had possessed the property in question for many years prior to the institution of this action. The exercise of exclusive trapping over the property, accompanied by the maintenance of the boundaries constituted corporeal possession over the entire tract. Norton v. Addie, supra.
The Collins group has assigned four (4) specifications of error.
The first specification of error is as follows:
"(1) The trial court erred in finding that defendants did not exercise possession over all portions of their tract and, in particular, did not exercise possession over that portion in dispute in this case."
The Collins group alleged that they possessed the property in dispute as owners. For this limited purpose, title may be used to show possession as owner, the extent of possession, and the length of time possessed. LSA-C.C.P. art. 3661. They argue that the property purchased by Levi Collins, Sr. in 1931 included the property in dispute. They introduced their title for this purpose.
Kirby Collins testified, R. 641:
(Mr. Richard):
"Q. Well, what do you feel that the [Collins] deed pertains todo you know?
"A. I have no way of knowing. We have never had an abstract pulled on the property, and eventually it will come out."
Thus, there was evidence before the jury on which it could find that the Collins group did not possess as owners the tract in dispute. There was some basis for the jury to conclude that the Collins group was claiming property not included in their deed.
Although the Collins group offered evidence of trapping one season, an attempt to raise chickens by building a chicken house, hunting snipe and having a tenant *616 house in the vicinity (all prior to 1959, the time of acquisition by the Plaisance group), this evidence, being evidence of isolated acts of a transitory nature, is insufficient to establish possession in the Collins group. Such occasional use of the property was insufficient to establish the corporeal possession of the Collins group. Norton v. Addie, supra.
The appellants contend that because they hold a deed translative of title any act of possession on part of their land constitutes constructive possession of the whole and they are presumed to possess to the full extent of their title. However, the constructive possession of the Collinses and their ancestors in title was lost by the corporeal possession of the disputed property by La-Terre beginning about 1927. By permitting La-Terre's possession to continue without interference, Alexson Anselmi and subsequently Levy (Levi) Collins lost constructive possession of the tract. See Norton v. Addie, supra. Therefore, there was evidence from which the jury could conclude that the Collins group did not possess, as owners, the property in dispute.
The Collins group assigned as the second specification of error the following:
"(2) The trial court erred in finding that plaintiffs exercised possession over the tract claimed by them, including that portion of the tract which was claimed by defendants as a portion of their tract."
The Plaisance group testified that they were in possession of the disputed property in question as owners and introduced their title to show the extent of their possession. Lester Plaisance testified that in April of 1959 he, along with his brother and father, purchased the property in dispute, together with other property, from La-Terre Land Co., Inc. The deed was introduced in evidence. Before the Plaisance group purchased the property in dispute it was marsh land. The "Lovell line", which had been surveyed by Lovell for La-Terre, marked the higher property from the marsh land. In 1959, the "protection levee" was constructed. That same year the Plaisance group purchased from La-Terre Land Company, Inc. two (2) tracts of land, one tract containing about thirty-five acres and one containing about seventeen acres. The property in dispute is located in the thirtyfive acre tract.
To show the extent of possession by the Plaisance group, Alexie Plaisance, Sr. testified that he and his family had maintained the "Lovell line" since 1959. They staked the line and cleaned it at least twice a year. They had 2½ inch galvanized pipe along the line at intervals of approximately two hundred (200') feet. When the Plaisance group purchased the property, there was a mineral lease in favor of Texaco Oil Company. In 1964, the Plaisance group again leased to Texaco Oil Company, and were still getting paid in December of 1973.
The Plaisance group, in 1967, executed a servitude to the Lafourche Parish Water District, and a water line was constructed between the "Lovell line" and the "protection levee" which dissected the property in dispute (before the fence was constructed by the Collins group). The property in dispute between the "Lovell line" and the "protection levee" was covered with grass, in some areas six (6') and seven (7') feet tall, between the years 1959 and 1968.
From this evidence the jury could conclude that the Plaisance group had possession necessary to maintain a possessory action.
The Collins group assigned as the third specification of error the following:
"(3) The trial court erred in allowing the testimony of Alexie Plaisance, now deceased, to be read by his son in the 1978 trial."
On July 21st, 1975, Alexie Plaisance, Sr. died. Prior to trial, there was a Motion and Order to Substitute Party Plaintiff, which substituted for Alexie Plaisance, Sr., his wife, Gertrude Dugas Plaisance, and his children, Kip Plaisance, Wayne Plaisance and Alexie Plaisance, Jr.
*617 The Collins group contends that it was prejudicial to permit Kip Plaisance, one of the parties, to read the testimony of his father taken at the earlier trial, in December of 1973. However, no such objection was made at the time of trial. Appellants can not raise that question for the first time on appeal. Further, the trial judge explained to the jury what was taking place. There is no evidence in the record, nor would the judge permit, any expressions of sympathy or exclamation by Kip Plaisance other than the simple reading of testimony. An objection was made as to its admissibility; this was properly overruled.
Forrest Griffin, who testified in the trial of December of 1973, was also deceased at the time of the trial, and Kip Plaisance read this testimony to the jury. Thus, with the attorneys reading the questions, Kip Plaisance read the testimony of Alexie Plaisance, Sr. and Forrest Griffin. There is nothing objectionable in this procedure.
In Rouyer v. Carroll, 47 La.Ann. 768, 17 So. 292 (1895), the Supreme Court said:
"The general rule, of ancient origin, is that in case a witness has died, or `departed the realm,' since his testimony was taken in some prior judicial proceeding, it may be introduced in evidence in a subsequent proceeding between the same parties. `Testimony of a witness in a previous suit between the same parties, for the same cause of action, where there has been an opportunity for cross-examination, may be used by either party, if the witness be dead or absent, or, for other cause, cannot be produced.' (citations omitted)."
See also Young v. Reed, 192 So. 780 (La. App. 2 Cir. 1939); Comment, The Admissibility of Former Testimony in Civil and Criminal Trials, 20 La.L.Rev. 146 (1959).
Comment, The Admissibility of Former Testimony in Civil and Criminal Trials, 20 La.L.Rev. 146 (1959), at 158, states:
"Former testimony is admissible as an exception to the hearsay rule when certain elements are present. These elements may be briefly summarized as follows: (1) unavailability of the witness; (2) a former tribunal with the power to subpoena witnesses, administer oaths, and allow cross-examination; (3) testimony under oath or a legally sufficient affirmation; (4) opportunity for cross-examination at the former proceeding; (5) identity of issues; and (6) identity of parties. Complete reciprocity of parties is not required in Louisiana and generally at common law. In a criminal case the accused must be confronted with the witnesses against him, but the courts hold that this requirement is satisfied when the accused was confronted by the witnesses at the former proceedings. The only one of the above elements which appears to present a substantial problem is identity of parties. The Louisiana Supreme Court still requires that the person against whom the testimony was offered must have been the same in both suits or there must have been privity in blood, law, or estate."
The Collins group assigned as the fourth specification of error the following:
"(4) The trial court erred in finding that plaintiffs' main demand was filed within one year of the alleged disturbance."
The Plaisance group filed the possessory suit on August 5, 1968, alleging that the Collins group constructed two (2) lines of barbed wire fence running between the "Lovell line" and the "protection levee" on or about August 24, 1967.
The Collins group presented evidence to prove that construction of the fence was actually begun on July 5, 1967. To substantiate this, they introduced the testimony of the Collinses who had worked on the fence and other testimony.
The Plaisance group contradicted the testimony of the Collins group, and also offered some evidence of an attempt by the Collins group to have the invoice and receipt of the purchase of the posts backdated. In any event, the jury heard the witnesses and, from its response to the interrogatories, it is apparent that the jury believed the evidence of the Plaisance group.
*618 The most that could be said for the evidence of the Collins group is that it shows only that a number of creosoted posts were put in the high grass on the property a few days after July 4, 1967. There is no evidence that any barbed wire was strung or that all of the posts were in place until August 24, 1967. It was also in August that the Collinses had some bulldozer work done on the property, which tends to confirm the August date.
The credible evidence shows that the disturbance occurred on or about August 24, 1967. Since the Plaisance suit was instituted on August 5, 1968, it was filed within one year of the alleged disturbance.
A jury verdict should be maintained unless the record reflects that its conclusions of fact are not supported by the evidence, or its application of the law is clearly erroneous. Perrin v. St. Paul Fire and Marine Insurance Company, 340 So.2d 421 (La.App. 4 Cir. 1976). In the absence of manifest error, the appellate court is not to disturb, on appeal, the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict, based upon its reasonable evaluation of credibility. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1 Cir. 1977).
The factual findings of the jury in determining possession of the disputed property by the Plaisance group at the time of the disturbance and for more than one year immediately prior to the disturbance, in determining that there was a disturbance by the Collins group, and that the Plaisance group filed the possessory action within one year of the disturbance are supported by credible evidence in the record. We have reviewed the evidence and under the particular facts and circumstances of this case, we find no manifest error in the jury's findings. See Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976). There was evidence which, if believed by the jury, as the verdict indicates it was, goes to show that it was the Plaisance group who was in possession for more than one year, the Collins group who disturbed the plaintiffs' possession, and that the Plaisance group brought the possessory action within one year of the disturbance.
We consider, as did the jury, that the Plaisance group possessed the property in question quietly and within interruption for more than one year prior to the disturbance in fact created by the construction of the barbed wire fence, and that the plaintiffs instituted this possessory action within a year of the disturbance. Therefore, we find that the plaintiffs have satisfied the requirements for bringing the possessory action; and, accordingly, we recognize the right of possession of the Plaisance group to the following described property situated in Lafourche Parish, Louisiana, within the West half (W ½) of East half (E ½) of Section 6, Township 20 South, Range 22 East, more particularly described as follows:

"TRACT I
"Beginning at the Northwest corner of Lot 1 of said Section 6, T20S-R22E, said corner being marked by a 2½" galvanized iron pipe set by J. A. Lovell, C.E., during the year 1938, the coordinates of which corner are X = 2, 341, 119.86' and Y = 260, 522.53';
"Thence South 1°25' East along the Western line of Lots 1 and 2 of said Section 6, for a distance of 1499.52 feet;
"Thence South 87°23'10" West for a distance of 830.55 feet;
"Thence North 15°46'15" West for a distance of 1565.75 feet to a point on the North line of said Section 6;
"Thence North 88°35' East along the North line of said Section 6, for a distance of 1218.55 feet to the point of beginning;
"Said Tract I containing 35.509 acres, more or less, and is bounded on the North by the North line of said Section 6, on the East by the Western line of Lots 1 and 2 of said Section 6, and on the South and West by the property of La-Terre Co., Inc."
*619 The judgment of the District Court is affirmed in all respects, at costs of defendants-appellants.
AFFIRMED.