385 So.2d 840 (1980)
Loulan PITRE
v.
TENNECO OIL COMPANY.
No. 13216.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
Rehearing Denied July 7, 1980.
*842 Roger M. Evans, New Orleans, for plaintiff-appellant Loulan Pitre.
Stanwood R. Duval, Jr., Houma, for defendant-appellee Tenneco Oil Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a possessory action involving an unfenced chunk of marsh land in the southern part of Lafourche Parish. The plaintiffs, Loulan Pitre and his siblings, appeal from an adverse trial court judgment rejecting their demand to be maintained in possession.
Loulan Pitre brought this action on November 19, 1975, claiming that the defendant, Tenneco Oil Company, had disturbed his possession of the rear three arpents of a 40 arpent tract[1] he claims to possess as owner. (An arpent is an old French unit of measurement equaling about 192 feet.) Pitre averred that Tenneco, in March 1975, ran a survey and erected "No Trespassing" signs near the 37 arpent line of his property, thereby disturbing his possession of the rear three arpents. On the trial court's sustaining of Tenneco's exception of nonjoinder of indispensable parties, Pitre amended his petition to bring in his brothers and sisters as plaintiffs or nominal defendants, since all of them own undivided interests in the property Pitre claims to possess. Both parties assert ownership of the disputed land, though the only issue is whether the Pitres are entitled to possess the property. Tenneco did not reconvene to be put in possession, but simply denied the plaintiffs' possession.
In 1904, David Pitre, Jr.father of the plaintiffs in this casebought from Manuel Daigre a slender tract of land in Cut Off, Louisiana, described as:
"A certain tract of land on the right bank of the bayou Lafourche, state of Louisiana, at about forty-three (43) miles below the town of Thibodaux, measuring, one-half (½) arpent front on said bayou by a depth of forty arpents, bounded above (formerly) by lands of Mrs. Jean M. Lonibas, nee Celina Pierce and below (formerly) by lands of Washington Cantrelle, together with all the buildings and improvements thereon, rights, ways, privileges and advantages to said tract of land belonging."
The deed was dated February 29, 1904, and filed in the Lafourche Parish conveyance records on March 5, 1904. The dispute arises because the 40 arpent tract of land described in the Pitres' deed traverses two *843 different sections in township 18 south, range 21 east, Lafourche Parish. The front thirty-seven arpents fall within section 4. The rear three arpents in dispute fall within section 53, which partially abuts section 4 on the west.
Tenneco does not question the Pitres' possession of the front thirty-seven arpents. The company claims, however, that the Pitres' title, when traced into the past, is limited to the property in section 4 and does not cover any property in section 53, which Tenneco acquired from its ancestor in title. Tenneco's title claims are borne out by the extensive and voluminous documentary evidence filed in the record. This evidence shows that Tenneco's immediate ancestor in title, LaTerre Company, Inc., acquired title to all of section 53, including the three arpents in dispute, in February 1927.
The documentary evidence also shows why the forty arpents listed in the Pitre deed do not fall entirely within section 4. The northern and southern boundary lines of section 4 run in a southwesterly direction from the west bank of Bayou Lafourche to the eastern boundary of section 53. The section lines are about forty arpents in depth. Historically, however, property owners within section 4 have possessed along lines running in a more westerly direction, thereby shortening the length of their tracts within the section by some three arpents. Had the possession lines within section 4 been parallel to the section boundary lines, the Pitres would have had about forty arpents within section 4 and this dispute probably would never have arisen. But for about 76 years, the Pitres and their father have possessed the property at an angle different from the angle of the section boundary, believing themselves to be owners of a tract forty arpents in depth. They have possessed the property in good faith as owners under a deed which makes no mention of the forty arpents being limited to a particular section of land. They seek to maintain their possession by bringing this appeal.

THE PITRES' ACTS OF POSSESSION
After buying the property in 1904, David Pitre, Jr. apparently erected a house on the front portion of the land along the high bayou ridge. Loulan Pitre was born in this house some 57 years ago and he lives in it today. Pitre testified that in years past he and his father hunted rabbits and crawfished on the marshy land beyond the bayou ridge, though neither activity proved too fruitful. Pitre's son, Dr. Holland Pitre, said he trapped on the property when he was a child and occasionally swam across a drainage canal and walked on the three arpents in dispute.
In the late 1940's the Pitres' father granted a right-of-way to the Lafourche Parish Police Jury for the digging of a drainage ditch at the rear of their property. The document purporting to grant the right-of-way said the ditch would be dug "through and across" the Pitre property. The drainage ditch was dug in the early 1950's and was located about thirty-seven arpents from the front of the Pitres' property. Loulan Pitre testified that he and his father always believed the canal had actually been dug through their property, even though the right-of-way document also said the canal would be cut at or near the forty arpent line. It is about 12 feet in front of or east of this ditch that Tenneco erected the "No Trespassing" signs which prompted this suit. Tenneco asserts that the canal was dug under a right-of-way granted by its ancestor in title, and this assertion is borne out by the evidence. The Pitres, however, were never told that the drainage ditch had been dug under any other right-of-way but theirs, and they always believed that they owned a certain amount of property to the rear of the drainage canal.
The drainage ditch and other drainage improvements made the front 37 arpents fairly dry, but left the disputed three arpents wet and marshy. The Pitres conducted few if any activities on the disputed land after the canal was dug, although Dr. Holland Pitre, as noted previously, testified he occasionally trapped and swam on the disputed area as a child.
*844 Although there were never any boundary markers or fences erected by the Pitres, Pitre said he and his neighbors had a good idea of where their boundaries were located. Pitre's belief that he owned property beyond the drainage ditch was buttressed by the fact that he and two of his neighbors noticed "No Trespassing" signs to the rear of the canal many years ago. Only in more recent years did the signs begin appearing in front of the canal. Pitre said he noticed the signs on his neighbors' property before any was placed on his land, but he did not feel it was his business to meddle in his neighbors' affairs. Although Pitre saw the signs on his neighbors' property in prior years, the first "No Trespassing" sign he says he saw on his tract was in 1973. "We chopped them down," he said. "They were excellent tomato stakes, the 2 X 2's were and I throw the rest in the canal or in the brush on my land." Pitre remembered chopping down about 3 or 4 signs before filing this suit in 1975. In connection with this suit, Pitre had a linear survey conducted to determine the exact location of a forty arpent line from his eastern boundary.
Besides living in the house and walking on some of the property, the only other act of corporeal possession conducted by the Pitres in recent years was Loulan Pitre's removal of the boundary stakes erected by Tenneco. (For a suggestion that such removal can constitute an act of corporeal possession, see Judge Marvin's dissenting statement in Holliday v. Continental Can Company, Inc., 351 So.2d 181, 184 (La.App. 2nd Cir. 1977).) The Pitres also claimed they granted a number of mineral leases over the disputed property, but the record shows that these leases were limited to property within section 4 and did not cover the property in dispute.

TENNECO'S ACTS OF POSSESSION
Tenneco claimed that it and LaTerre Company, Inc., its ancestor in title, exercised complete dominion over the property under a title to the entirety of section 53. LaTerre employees conducted an extensive survey of a 12,500 acre tract of land which included section 53 in the late 1960's. In connection with this survey, they located old boundary markers which had been erected by surveying crews in the early part of this century and they erected no trespassing signs along the boundary as determined by the surveyors. Beginning around 1951, sporadically at first but with greater frequency in more recent years, LaTerre and Tenneco employees patrolled the disputed property by navigating a small boat through the drainage canal. These patrols checked for trespassers and maintained the boundary by erecting and replacing "No Trespassing" signs at varied intervals.
Tenneco and its ancestors began trapping lease activity on the disputed property in May of 1925. Since 1956 the disputed land has been trapped by Alces Pitre under a written lease with Tenneco and its ancestors. Although Alces Pitre never obtained a written lease from the Pitre plaintiffs in this case, Alces Pitre is the husband of Loulan Pitre's cousin, and Loulan Pitre testified that he and his neighbors tacitly acquiesced in Alces' activities for more than 50 years. "Things were hard enough," Loulan explained. "Everybody let him trap. They didn't think about leases."
In 1952, LaTerre Company, Inc. granted a right-of-way for a natural gas pipeline across the disputed land. An underground pipeline was eventually built, apparently within a few years of the right-of-way grant. The record is unclear as to exactly when Pitre discovered the pipeline. A reasonable inference from the scarce testimony on this matter is that Pitre discovered the pipeline around 1975 when he was told of its existence by a neighbor. He and the neighbor walked to the rear of the property and pushed a pole into the ground until it struck the pipeline.
Tenneco and its ancestors granted numerous mineral leases over the disputed property beginning in 1906, and they began grazing lease activity in 1952. There was no showing at trial that any corporeal activity was conducted in connection with the mineral or grazing leases. Tenneco also contended that soil borings were taken on the *845 disputed land, but the record shows that the soil borings were made near the disputed property and not on it.

THE TRIAL COURT'S JUDGMENT
The trial judge held that the Pitres did not have corporeal or civil possession of the disputed tract at the time of the alleged disturbance. He refused to allow the Pitres' corporeal possession of the front of the tract to represent constructive possession of the whole because he felt the Pitres' title "did not delineate ascertainable boundaries." Alternatively, the trial judge held that even if the Pitres had constructive possession of the entire forty arpents, their possession was lost by Tenneco's exercise of "complete dominion" over the disputed land.
The plaintiffs have appealed from this adverse trial court judgment, contending that the trial judge erred in failing to find that they were in possession of the property at the time of the disturbance and in holding that Tenneco exercised complete dominion over the property so as to bar their possessory action.

THE LAW
This action is governed primarily by La.C. C.P. art. 3658, which provides:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
"(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
Although Article 3658 lists four requirements for bringing the possessory action, the battle lines are often drawn over the question posed by paragraph (2): Who has the right to possess? This question, in turn, is often decided by a determination of whether any acts of the defendant have sufficiently interrupted the plaintiff's possession so as to strip the plaintiff of his right to possess.
If a plaintiff proves he had the right to possess at the time of the disturbance, he has won his suit, provided the action was filed within a year of the disturbance. A plaintiff who has physical possession of immovable property but who has not acquired the right to possess cannot win a possessory action, unless evicted by force or fraud. (And there is even some question as to whether the action for eviction by force or fraud is actually a possessory action in the technical sense. See Yiannopoulous, 2 Louisiana Civil Law Treatise, Property, § 213, page 573 (2d Ed. 1980). In any event, a person evicted by force or fraud need only prove he possessed the property at the time of the forceful or fraudulent eviction; there is no need to prove he had the right to possess.)

HOW THE RIGHT IS ACQUIRED
A person acquires the right to possess immovable property by possessing the property quietly and without interruption for more than a year. La.C.C.P. art. 3658(2); La.C.C. art. 3454(2); see also La. C.C. arts. 3449(2) and 3487. The species of possession required to acquire the right to possess is either corporeal possession or civil possession preceded by the corporeal possession of the plaintiff or his ancestors in title. La.C.C.P. art. 3660. In all cases, a person must possess as owner and for himself. Thus, to acquire the right to possess, "one must combine the intention of possessing as owner with the corporeal detention of the thing." Norton v. Addie, 337 So.2d 432, 436 (La.1976).
To determine the type of corporeal possession sufficient to achieve the right to possess or to commence the running of acquisitive prescription, Louisiana courts look to the nature of the property and the facts and circumstances of each case. Plaisance v. Collins, 365 So.2d 608 (La.App. 1st Cir. *846 1978). For example, the overt acts of actual possession necessary to show the corporeal detention of marsh land may not be sufficient in a given case to show the corporeal detention of timber land or farm land. A person who owns unfenced and unproductive marsh land may have a difficult time conducting any acts of corporeal possession at all on the property.
The Louisiana law of possession and the jurisprudence interpreting it also provide that a person who possesses property in good faith under a deed translative of ownership is considered to possess to the extent of his title, provided he has corporeally possessed part of the property described in the deed. In such a case, the person is considered to be in constructive possession of the entire tract. In effect, he acquires the right to possess the entire property by corporeally possessing, quietly and without interruption, a portion of the property for more than one year. La.C.C. arts. 3437, 3498; Norton v. Addie, supra; Plaisance v. Collins, supra.
Once a person shows he has possessed the property as required by law quietly and without interruption for more than a year, he has proven his right to possess. There is no need to show he acquired this right in the year immediately preceding suit, but only that he obtained the right at one time and that he has not lost it prior to the disturbance. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975).

HOW THE RIGHT IS LOST
A person loses the right to possess immovable property either voluntarily, by transferring or abandoning the property; or involuntarily, by being evicted or expelled for more than a year or by acquiescing in a third party's usurpation of the property for more than a year. La.C.C. arts. 3447, 3448, 3449. A question often arises as to what type of activity by an adverse party will sufficiently interrupt a person's right to possess so as to usurp his possession and strip him of his right upon passage of more than a year's time. Not every disturbance is strong or long enough to interrupt another's right to possess. Disturbances which do not interrupt another person's right to possess may be challenged in court and the disturber cast for appropriate damages and other appropriate relief. But such minor disturbances will be insufficient, even if unchallenged within a year's time, to strip the right to possess from the person who presently has that right. See Liner, supra, particularly the per curiam opinion on rehearing, 319 So.2d 778; Plaisance v. Collins, supra; Richard v. Comeaux, 260 So.2d 350 (La.App. 1st Cir. 1972); Yiannopoulous, supra, § 217, page 582; and Work of the Appellate Courts 1974-1975, Property, 36 La.L.Rev. 354 (1976).
Louisiana courts have indicated that for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. Pittman v. Bourg, 179 La. 66, 153 So. 22 (1934); Souther v. Domingue, 238 So.2d 264 (La.App. 3rd Cir. 1970), writ refused 256 La. 891, 239 So. 2d 544 (1970); Hebert v. Chargois, 106 So.2d 15 (La.App. 1st Cir. 1958). In addition, the person with the right to possess must acquiesce in the interruption for more than a year without conducting any act of possession or without interfering with the usurper's possession. La.C.C. art. 3449(2).
Our courts have also indicated that the person whose right to possess is based upon a mere constructive possession will lose his right to an adverse possessor who corporeally possesses the property in some manner. Plaisance v. Collins, supra; Norton v. Addie, supra; Robertson v. Morgan, 116 So.2d 141 (La.App. 1st Cir. 1959); Wagley v. Cross, 347 So.2d 859 (La.App. 3rd Cir. 1977). These cases suggest, perhaps, that the type of corporeal possession necessary to oust the constructive possession of another person need not be as strong as the type of corporeal possession necessary to interrupt the corporeal possession of another party.
*847 If any single rule of law can be fashioned from the foregoing, it is that the plaintiff, to win a possessory action, must show that he at one time acquired the right to possess and that he has not lost the right prior to the disturbance. Stated another way, "possessory protection is available to anyone who has previously acquired the right to possess and did not lose it in the year immediately preceding the disturbance." Yiannopoulous, supra, § 215, page 580; see also Tate, J., concurring in denial of rehearing in Liner, supra, 319 So.2d 779, 782. In all cases, of course, suit must be filed within a year of the disturbance. La. C.C.P. art. 3658(4). A person who proves that he had the right to possess and that he has not lost it in the year prior to the disturbance has proved, concomitantly, that he is in possession of the property as required by La.C.C.P. art. 3658(1). See Liner, supra; and Plaisance v. Collins, supra, at 612.
We have elaborated our discussion on the right to possess because this concept and the issues which surround it are paramount in the case at bar.

DID THE PITRES HAVE THE RIGHT TO POSSESS?
The facts as set forth earlier in this opinion prove unquestionably that Loulan Pitre and his siblings at one time acquired the right to possess. For at least 57 years and probably for 76 years, the Pitre family lived in the house at the front of the property, corporeally possessing at least that portion of the tract upon which the house was built. Other acts of corporeal possession were conducted on other parts of the property, including walking, hunting, crawfishing, swimming, poking for the natural gas pipeline and removing the "No Trespassing" signs.
The record is also clear that the Pitres possessed the property in good faith as owners under a title translative of ownership of a forty arpent tract of land. The title document, which is valid in form, makes no mention of section lines, townships or ranges. Under the civil code rules governing possession and the acquisitive prescription of 10 years, a person who corporeally possesses part of the property in good faith under just title (as those words are understood in our law) is considered to be in constructive possession of the entire tract as set forth in the deed. La.C.C. arts. 3437, 3498.
The chain of title under which the Pitres acquired the property, to the extent it was introduced to limit their possession, is irrelevant in this action, just as Tenneco's chain of title is irrelevant. The whole concept of good faith acquisitive prescription connotes that the chain of title is defective in some way. La.C.C. arts. 3435, 3451, 3484, 3485. While the chain of title may be relevant to show the length of time that a party and his ancestors in title have had possession of the property, see Yiannopoulous, supra, § 212, page 566, the chains of title are irrelevant to show extent of possession. What is relevant to show extent of possession in a case in which both parties possess in good faith under just title are the individual deeds under which the parties claim to possess. In this case, the Pitres' deed describes their property as being ½ arpent wide by 40 arpents deep. They have possessed under this deed since 1904 in good faith believing themselves owners. We must hold, therefore, that the Pitres' corporeal possession of the front portion of the 40 arpent tract was sufficient to give them at least constructive possession of the entire 40 arpents depth, and that their various acts of corporeal possession (walking, hunting, trapping, swimming) on the disputed area was sufficient to establish a civil possession preceded by corporeal possession. Since they possessed for more than a year, quietly and without interruption, their possession was sufficient to give them the right to possess the entire tract, including the three arpents in dispute.

DID THE PITRES LOSE THE RIGHT TO POSSESS?
Having found that the Pitres at one time acquired the right to possess, we must now determine whether any acts by Tenneco or *848 its ancestors were of sufficient strength and length to interrupt the Pitres' possession and usurp the Pitres' right to possess. Did Tenneco conduct and did the Pitres acquiesce in any activity which was sufficient to put the Pitres on notice that their dominion was being seriously challenged?
Unquestionably, Tenneco committed a number of disturbances on the Pitres' property, each of which would have entitled the Pitres to bring a possessory action. Tenneco's surveying of the property in the late 1960's and its patrols across the property through the drainage ditch amounted to disturbances in fact. But the surveying of boundaries and the marking of the boundary line were insufficient to interrupt the Pitres' possession and usurp their right to possess. Our courts have held fairly consistently that surveying, and acts preparatory to it, are insufficient to interrupt another person's possession. S.D. Hunter Foundation v. Board of Commissioners of the Caddo Levee District, 286 So.2d 525 (La.App. 2nd Cir. 1973); Holliday v. Continental Can Company, Inc., supra; Broussard v. Louisiana Land and Exploration Company, 164 So.2d 84 (La.App. 1st Cir. 1964), writ denied 246 La. 603, 165 So.2d 488 (La.1964); but see Olinkraft, Incorporated v. Allen, 333 So.2d 250 (La.App. 2nd Cir. 1976). Tenneco's patrol activities were "isolated acts of a transitory nature" which were insufficient to dispossess the Pitres. See Plaisance v. Collins, supra at 616, where sporadic trapping, chicken farming, hunting and leasing a house in the vicinity were held to be insufficient acts to dispossess the plaintiff. The erection of the "No Trespassing" signs beginning in 1973 was insufficient to dispossess the Pitres, since Loulan Pitre tore them down, indicating that he was not acquiescing in this interference. In Liner, supra, the Supreme Court held that when the plaintiff blocked off a ditch cut across his property by the defendant, he appropriated the ditch for his own use. By doing so, he refused to acquiesce in this disturbance. "No Trespassing" signs are mentioned in Liner, but the opinion does not say what happened to them. By removing the "No Trespassing" signs and appropriating them to his own use, Pitre expressed his possession of the disputed property. The mere act of walking on the property and removing the signs was an act of corporeal possession.
The granting of the pipeline right-of-way and the eventual construction of an underground pipeline present a more difficult question, but we feel that these activities, too, were insufficient to interrupt the Pitres' peaceable possession. The Pitres were not aware the pipeline had been constructed until the time this suit was filed, and they were only able to locate it by poking in the ground beyond the drainage ditch. The pipeline did not put the Pitres on notice that their possession was being seriously challenged because the pipeline was invisible. Our state Supreme Court's opinion in Board of Commissioners of the Caddo Levee District v. S.D. Hunter Foundation, 354 So.2d 156 (La.1977) is not inapposite to this conclusion. There, a 20 to 25 foot right-of-way was cleared for the pipeline construction and was kept clear and maintained by a grantee of the plaintiff. The court noted that the pipeline was "clearly visible" and "clearly apparent" so as to be sufficient to interrupt possession for purposes of acquisitive prescription. In the case at bar, the pipeline could be discovered only by poking a stick into the ground.
The fact that Alces Pitre trapped the disputed property under a written lease from Tenneco and without a written lease from the Pitres could, in the proper case, constitute an interruption of the right to possess. However, as noted above, Alces Pitre was related by marriage to Loulan Pitre and he trapped the land for many years with the complete acquiescence and tacit consent of Loulan Pitre and the other Pitre heirs. Therefore, we are not convinced that Alces Pitre's trapping activities were sufficient to deprive the Pitres of their right to possess.
Tenneco's granting of other trapping, grazing and mineral leases were disturbances in law which, under our jurisprudence, were insufficient to interrupt the *849 Pitres' quiet and peaceable possession. See Tate, J., concurring in Ree Corporation v. Shaffer, 261 La. 502, 260 So.2d 307 (La. 1972); Chauvin v. Kirchhoff, 194 So.2d 805 (La.App. 1st Cir. 1967).
We are simply not convinced that any activity conducted by Tenneco on the disputed tract interrupted the quiet and peaceable possession of the Pitre family. The Pitres possessed the property as owners and conducted a number of activities which were consistent with the marshy nature of the property in question. They never acquiesced in Tenneco's boundary claims and they brought this action when it became apparent that Tenneco would continue to assert that the boundary was in front of the canal. We hold, therefore, that the Pitres proved they had the right to possess and they did not lose that right in the year immediately preceding this suit. They have proven the requisites for the possessory action and are entitled to be maintained in their possession.

DAMAGES
In their petition, the plaintiffs prayed not only to be maintained in possession and to require the defendant to assert the petitory action, but also for damages in the amount of $5,000.00. We feel the sum of $1,500.00 will be sufficient to compensate the plaintiffs for the inconvenience and mental anguish they have been forced to endure during this ordeal.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and IT IS ORDERED, ADJUDGED and DECREED that there be judgment in favor of plaintiffs recognizing their right to the possession of the immovable property described as follows:
"A certain tract of land on the right bank of the bayou Lafourche, state of Louisiana, at about forty-three (43) miles below the town of Thibodaux, measuring one-half (½) arpent front on said bayou by a depth of forty arpents, bounded above (formerly) by lands of Mrs. Jean M. Lonibas, nee Celina Pierce and below (formerly) by lands of Washington Cantrelle, together with all the buildings and improvements thereon, rights, ways, privileges and advantages to said tract of land belonging."
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendant, Tenneco Oil Company, bring a petitory action to assert any claim of ownership that it has to the above described property within sixty days after this judgment becomes executory, or be precluded thereafter from asserting a claim of ownership thereof.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that there be judgment in favor of plaintiffs and against Tenneco Oil Company for the full sum of $1,500.00, with legal interest from date of judicial demand, and for all costs including costs of this appeal. REVERSED AND RENDERED.
NOTES
[1] As the property description later in the text shows, the Pitres' deed sets forth a tract of land measuring ½ arpent by 40 arpentsa total of 20 square arpents. We will refer to the tract simply as the 40 arpent tract of land.