439 So.2d 517 (1983)
Karl MIRE
v.
Levi L. CROWE, Jr., et al.
No. 82 CA 1079.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*519 Frank M. RePass, III and Dolores Williams, Slidell, for plaintiff, appellee.
William J. Faustermann, Jr., Ron W. Guth, Slidell, for defendant, appellant.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is a possessory action involving a triangular piece of property located in St. Tammany Parish.
Karl Mire instituted this possessory action on December 10, 1981, against Levi L. Crowe, Jr.[1] claiming that the defendant had disturbed his possession by advising plaintiff's lessee that Crowe claimed ownership of a portion of the property. After trial on the merits, judgment was rendered in favor of plaintiff and defendant perfected this appeal.
On March 16, 1968, Karl Mire bought from Levi L. Crowe, Jr. property located in Slidell, Louisiana described as follows:
"A certain tract or parcel of land, together with all the buildings and improvements thereon, and all rights, ways, advantages, and appurtenances thereunto belonging or in anywise appertaining situated in St. Tammany Parish, Louisiana, and more particularly described as Lot Six (6) of Section Eighteen (18) in Township 8 South, Range 15 East, of the St. Helena Meridian Louisiana, containing two (2) acres and sixteen hundredths of an acre, according to the official plat of survey of the said lands, in file in the General Land Office."
Prior to passage of this act of sale, Mire and Levi Crowe, Jr. walked the boundaries of the property to be conveyed. The area pointed out to Mire by Crowe included an area in Lot 7, which could be generally described as lying east of Lot 6 and bounded on the north and south by an extension of the north and south lines of Lot 6 and on the east by Langston's Bayou.
Crowe does not question Mire's possession of Lot 6. Crowe claims, however, that Mire's title is limited to Lot 6 and does not cover any property in Lot 7. Both parties assert ownership of the disputed land, although the only issue on this appeal is whether Mire is entitled to be maintained in possession of the property. Crowe did not reconvene for possession of the property, but simply denied plaintiff's possession.

Mire's Acts of Possession
Upon acquisition of Lot 6 in 1968, Mire immediately took possession of the disputed property. Mire employed a surveyor and had the property surveyed. Mire and his nephews then walked the property and placed stakes for construction of a fence. A new fence was built along the northern boundary of the property to Langston Bayou and along the southern boundary to a point referred to as the "gully". No fence was erected through the "gully" because the area was under water during parts of the year. Mire also maintained and repaired the fences.
Hunting and fishing activities were also conducted on the disputed area. Family *520 members and friends of Karl Mire often used a portion of the disputed property known as the "hill" to conduct these activities, with Mire's permission.
Several of Mire's nephews (with Mire's consent) raised hogs in the area west of the gully and allowed cattle to graze over the entirety of the area, including the "hill".
Mire erected a barn on the disputed area west of the gully and maintained a garden for several years in the general vicinity of the barn. Grass was clipped and maintained by Mire on the disputed tract.
In July, 1981, Mire leased the property to John Buttrey for the purpose of housing and maintaining horses on the premises.

Crowe's Acts of Possession
Crowe lived on the property in dispute as a child and conducted various activities on the property prior to the sale to Mire in 1968. Crowe now owns a campsite south of and adjacent to the Mire property. The Crowe camp is bounded on the north by the disputed "hill", on the east by Langston Bayou, and on the west by other Mire property. Crowe and his friends have used the disputed tract on several occasions to get to his camp.

The Trial Court's Judgment
The trial court found that Mire was entitled to be maintained in possession of the disputed area and stated:
"... since acquisition of the property, Mr. Mire has been in actual, physical, open, public, unequivocal continuous, and uninterrupted possession of the property with the intent to possess as owner. The Court is also convinced by the evidence that upon execution of the act of sale on March 16, 1968, Mr. Crowe terminated his prior possession of the disputed area. Mire was in possession at the time of Crowe's disturbance and had been so without interruption for more than a year prior to the disturbance. Crowe's disturbance was a disturbance in fact, and the possessory action was instituted by Mire well within a year of the disturbance. The few trespasses upon the property by Crowe and his friends, without knowledge of Mire, are of no significance. These trespasses are inadequate to establish possession by Crowe or his usurpation of the property in dispute. These disturbancesunknown to Mire are not strong enough to interrupt Mire's right to possess. These activities would in no way bring home to Mire the realization that his possession and control of the property is being challenged by Crowe...."
Defendant has appealed the trial court judgment, contending that the trial judge erred in finding that the plaintiff maintained the necessary possession of the area in dispute.

The Law
This action is governed primarily by LSA-C.C.P. art. 3658, which provides:
"To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbances occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance."
Although Article 3658 lists four requirements for bringing the possessory action, the battle lines are often drawn over the question posed by paragraph (2): Who has the right to possess? This question, in turn, is often decided by a determination of whether any acts of the defendant have sufficiently interrupted the plaintiff's possession so as to strip the plaintiff of his right to possess.

How the Right is Acquired[2]
A person acquires the right to possess immovable property by possessing the *521 property quietly and without interruption for more than a year. LSA-C.C.P. art. 3658(2); LSA-C.C. art. 3454(2), now repealed; see also LSA-C.C. arts. 3449(2), now LSA-C.C. art. 3434, and 3487, now LSA-C.C. arts. 3435, 3436 and 3476. The species of possession required to acquire the right to possess is either corporeal possession or civil possession preceded by the corporeal possession of the plaintiff or his ancestors in title. LSA-C.C.P. art. 3660. In all cases, a person must possess as owner and for himself. Thus, to acquire the right to possess, "one must combine the intention of possessing as owner with the corporeal detention of the thing." Norton v. Addie, 337 So.2d 432, 436 (La.1976). Pitre v. Tenneco Oil Co., 385 So.2d 840 (La.App. 1st Cir.1980), writ denied 392 So.2d 678 (La.1980).
This court in Plaisance v. Collins, 365 So.2d 608 (La.App. 1st Cir.1978) stated at page 611:
"The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. Gaulter v. Gennaro, 345 So.2d 92 (La.App. 1st Cir.1977). What constitutes possession in any case is a question of fact and each case must rest upon its own peculiar circumstances. Certainly, the landowner can only exercise over his land such possession as is practical and is reasonably contemplated from the nature of the property. Thus, the acts which must be shown to establish possession are governed to a large extent by the use to which the land is destined or for which it is suitable. The type of possession essential to maintain a possessory action for one kind of property may differ from that required for another. Obviously, the possession requisite in the case of farm land is more than in the case of wood land; and, more possession is required in the case of wood land than in the case of swamp or marsh land. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975). That there may be possession of swamp or marsh land can not be questioned. The possession of marsh land contemplated by law is that which is commensurate with its nature, its chief value, and by the extent of the operations conducted thereon which the character of the soil and surroundings may reasonably permit. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952)."
The Louisiana law of possession and the jurisprudence interpreting it also provide that a person who possesses property in good faith under a deed translative of ownership is considered to possess to the extent of his title, provided he has corporeally possessed part of the property described in the deed. In such a case, the person is considered to be in constructive possession of the entire tract. However, when one possesses without title, he is required to show an adverse possession by enclosures. Hill v. Richey, supra. Corporeal possession required to maintain a possessory action when one has no title contemplates actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Hill v. Richey, supra; Gaulter v. Gennaro, supra.
Hill v. Richey, supra, sets forth the following concerning enclosures:
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means `enclosed only by a fence or wall' would be giving it a very strict and narrow construction, not justified or *522 supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases." (emphasis added).
Once it is established that a person has possessed property, as required by law, quietly and without interruption for more than a year, he has proven his right to possess. There is no need to show he acquired this right in the year immediately preceding suit, but only that he obtained the right at one time and that he has not lost it prior to the disturbance. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975).

How the Right is Lost
A person loses the right to possess immovable property either voluntarily, by transferring or abandoning the property; or involuntarily, by being evicted or expelled for more than a year or by acquiescing in a third party's usurpation of the property for more than a year. LSA-C.C. arts. 3447, 3448, 3449, now LSA-C.C. art. 3433. Pitre v. Tenneco Oil Co., supra.
A question often arises as to what type of activity by an adverse party will sufficiently interrupt a person's right to possess so as to usurp his possession and strip him of his right upon passage of more than a year's time. Not every disturbance is strong or long enough to interrupt another's right to possess. Disturbances which do not interrupt another person's right to possess may be challenged in court and the disturber cast for appropriate damages and other appropriate relief. But such minor disturbances will be insufficient, even if unchallenged within a year's time, to strip the right to possess from the person who presently has that right. See Liner, supra, particularly the per curiam opinion on rehearing, 319 So.2d 778; Pitre v. Tenneco Oil Co., supra; Plaisance v. Collins, supra; Richard v. Comeaux, 260 So.2d 350 (La.App. 1st Cir.1972); Yiannopoulous, 2 Louisiana Civil Law Treatise, Property, § 217, page 582 (2d Ed. 1980); and Work of the Appellate Court1974-1975, Property, 36 La.L. Rev. 354 (1976).
Louisiana courts have indicated that for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. Pittman v. Bourg, 179 La. 66, 153 So. 22 (1934); Souther v. Domingue, 238 So.2d 264 (La.App. 3rd Cir. 1970), writ refused 256 La. 891, 239 So.2d 544 (1970); Hebert v. Chargois, 106 So.2d 15 (La.App. 1st Cir.1958). In addition, the person with the right to possess must acquiesce in the interruption for more than a year without conducting any act of possession or without interfering with the usurper's possession. LSA-C.C. art. 3449(2), now LSA-C.C. art. 3434.
The single rule of law that can be fashioned from the foregoing is that the plaintiff, to win a possessory action, must show that he at one time acquired the right to possess and that he has not lost the right prior to the disturbance. Stated another way, "possessory protection is available to anyone who has previously acquired the right to possess and did not lose it in the year preceding the disturbance." Yiannopoulous, supra, § 215, page 580; see also Tate, J., concurring in denial of rehearing in Liner, supra, 319 So.2d 779, 782. In all cases, of course, suit must be filed within a year of the disturbance. LSA-C.C.P. art. 3658(4). A person who proves that he had the right to possess and that he has not lost it in the year prior to the disturbance has proved, concomitantly, that he is in possession of the property as required by LSA-C. C.P. art. 3658(1). See Liner, supra, and Plaisance v. Collins, supra, at 613.

Did Mire have the Right to Possess?
The facts that the trial court found, and we agree, prove that Karl Mire acquired the right to possess. For some fourteen years, Mire, his family, and his friends have performed various acts of corporeal possession on the disputed tract. Upon purchasing Lot 6 in 1968, Mire moved onto the property, had the property surveyed, and erected visible boundaries which complemented *523 natural boundaries. Other acts of corporeal possession were conducted on the property, each act corresponding to the different kinds of property involved. Certain cleared areas were used to build a barn and plant a garden. The more wooded areas were utilized for walking and hunting. The areas which were partially covered by water were used for fishing. The disputed property was also used to graze cattle and raise hogs. Mire also granted a lease to a portion of the disputed tract. Those areas on which no corporeal activities were conducted were enclosed within the natural and the artificial boundaries established by Mire.
The record is also clear that when Mire took possession of Lot 6 and the disputed portion of Lot 7 in 1968, Crowe, who had previously conducted activities on the property, abandoned his use of the property, as owner, until August, 1981.

Did Mire Lose the Right to Possess?
Having found that Mire acquired the right to possess, and actually possessed, we must now determine whether any acts of Crowe were of sufficient strength to interrupt Mire's possession or usurp Mire's right to possess.
Unquestionably, Crowe committed a number of trespasses on the property. Crowe crossed Mire's property to get to his own camp, primarily because Crowe had enclosed his camp by selling the surrounding property which fronted roads. These trespasses, however, seem not to have been made with Mire's permission.
Crowe may also have conducted several disturbances, each of which would have entitled Mire to bring a possessory action, as Crowe hunted and fished on the disputed tract through the years. These isolated acts were insufficient to dispossess Mire, especially in light of the fact that Crowe had prior to the sale pointed out the now disputed area to Mire as being sold to Mire. See Plaisance v. Collins, supra at 616, where sporadic trapping, chicken farming, hunting, and leasing a house in the vicinity were held to be insufficient acts to dispossess the plaintiff.
Additionally, when plaintiff's lessee, John Buttrey, was advised by Crowe on August 16, 1981, that he must cease building a corral and developing the "hill", plaintiff instituted this possessory action on December 10, 1981, clearly within a year of the disturbance.
We are simply not convinced that any of the activities conducted on the disputed tract prior to the disturbance in August, 1981, interrupted the quiet and peaceable possession of Mire. Mire possessed the property as owner and conducted numerous activities which were consistent with the nature of the property in question. He never acquiesced in Crowe's claims to the property, and he brought this action when it became apparent that Crowe claimed ownership of the "hill". The trial court correctly determined that Mire proved his right to possession of the disputed area and that he did not lose this right in the year immediately preceeding this suit. The requisites for the possessory action were clearly established, and Mire is entitled to be maintained in possession.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.
NOTES
[1] Claire Crowe DeLaughter and H.A. Powell were also named as defendants. H.A. Powell was dismissed as a party defendant when it was determined that he had transferred ownership of his interest in the property. Mire amended his petition, naming Preferred Properties, Inc., the record owner of the property, as a defendant. Default judgments were entered against Claire Crowe DeLaughter and Preferred Properties, Inc. As neither has appealed from these judgments, they are not before us on appeal.
[2] Chapters 1 and 2 and Chapter 3, Sections 1 and 2 of Book III, Title XXIII of the Louisiana Civil Code of 1870 ("Of Occupancy, Possession, and Prescription") have been revised and redesignated by Acts of 1982, No. 187, § 1, effective January 1, 1983.