808 So.2d 833 (2002)
Aaron GRIFFIN
v.
LAGO ESPANOL, L.L.C.
No. 2000 CA 2544.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*835 L. Stephen Rastanis, Baton Rouge, Counsel for Plaintiff/Appellant Aaron Griffin.
Amy D. Berret, Baton Rouge, Counsel for Defendant/Appellee Lago Espanol, L.L.C.
Before: FITZSIMMONS, DOWNING, and LANIER,[1] JJ.
WALTER I. LANIER, JR., J. Pro Tem.
This is a possessory action. The plaintiff, Aaron C. Griffin, contends that he is entitled to the legal possession of twenty-two (22) acres of land in the E ½ and W ½ of Lot 8, Section 19, Township 9 South, Range 2 East in Iberville Parish, Louisiana. He asserts that his possession was disturbed and/or he was evicted from the property by the defendant, Lago Espanol, L.L.C. (Lago) on January 19, 1998. Lago answered the petition, asserted a peremptory exception raising the objections of no right of action and no cause of action in the answer and asserted a reconventional demand for damages in tort. Griffin subsequently amended his petition claiming the right to possess 36.531 acres. Lago filed a peremptory exception raising the objection of prescription asserting that "Griffin lost such possession by numerous disturbances in both law and fact that occurred during the period of 1966 until his ultimate eviction on January 19, 1998." Apparently, this exception was referred to the merits. After a trial on the merits, the trial court sustained the peremptory exception raising the objection of prescription and dismissed the plaintiffs petition with prejudice at his costs. Griffin took this devolutive appeal.

FACTS
Griffin began using the property in dispute in 1966. He had no title to the *836 property and paid no taxes on it. Griffin's activities on the property were riding a three wheeler and keeping a few goats, a cow or two and, perhaps, some horses on it. There were some out buildings on the property. There was a fence around at least part of the property. The trial court found it was unclear who may have built the fence and when it was repaired, but determined that the plaintiff kept up the fence.
Lago and its predecessor in title, Denkmann Associates (Denkmann), paid the taxes on the property from 1979 through 1997. The Bayou Paul Hunting Club has leased the property from the defendant and its predecessor since 1987. In 1995, Denkmann leased a piece of the property located in St. Gabriel, Louisiana, to Griffin for residential purposes. This lease stated that the property leased and the surrounding property was owned by Denkmann.
From January to March of 1997, representatives of Lago and representatives of Gulf Engineers & Consultants surveyed the property for the purpose of using the property for mitigation banking to obtain a conservation servitude. Bruce Monroe, a land manager for Lago, made occasional visits to the property from 1995 to the end of 1997. In April of 1997, Monroe received information that some work had been done on the fence surrounding the property. On April 9, 1997, Monroe sent a letter to all of the defendant's lessees who lived on the cul-de-sac adjacent to the property, including Griffin. The letter stated:
Dear Mr. Griffin:
It has come to my attention that possibly a fence has been constructed on the property south of your house. This is property owned by Lago Espanol, L.L.C. just like the property on which your house is currently placed. No one has been given the authority to construct such a fence. This situation must be immediately rectified. If I have not heard from the responsible party by noon, Friday, April 18, 1997, then I will take matters into my own hands.
 Regards,
 Bruce M. "Buck" Monroe
Griffin contends that he did not receive this letter. Approximately two weeks later, Ronald Gremillion, an employee of the defendant, was sent to talk to Griffin about the letter and to make sure work on the fence had stopped. At that time, Griffin told Gremillion that he was not the party responsible for the work and made no claim of ownership to the property. On this visit, Gremillion noticed that the work on the fence had stopped.
In October of 1997, Badger Oil Company, pursuant to a lease agreement with the defendant, began drilling operations for oil on the property. The entire process from clearing the site to drilling took approximately five months. All of Griffin's neighbors and Griffin saw these operations.
On January 19, 1998, Lago sent Griffin a letter notifying him that the lease on his house and lot was being terminated. A second letter was sent to Griffin advising him that Lago had been given information that Griffin was conducting cattle operations on the property and these operations were not permitted. In this letter, Lago claimed ownership of the property and told Griffin that he had no right to conduct cattle operations or any other activities on the property. The letter demanded that the plaintiff vacate the property and remove all of his belongings from the premises, including the disputed property, by January 31, 1998. Griffin then filed this action against Lago claiming that this letter disturbed his peaceful possession of the property.

*837 THE LAW
This is a possessory action provided for in La. C.C.P. art. 3655 et seq. It is being brought by an alleged possessor of immovable property seeking to be maintained in his possession of the property after a disturbance. La. C.C.P. art. 3658 provides as follows:
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.

OBJECTION OF PRESCRIPTION
Lago's peremptory exception raising the objection of prescription asserts, in pertinent part, that "even if Griffin was in possession of the tract in question (which Lago denies), Griffin lost such possession by numerous disturbances in both law and fact that occurred during the period of 1966 until his ultimate eviction on January 19, 1998." This language implies that La. C.C.P. art. 3658(2) provides for a liberative prescription of one year and that since there were disturbances of Griffin's possession within one year of the date of the disturbance complained of in the petition, Griffin lost his right of possession.
In his oral reasons for judgment, the trial judge stated the following:
Having said those things, let me point out that Mr. Griffin was evicted on January 19, I believe, of 1998, and filed suit on January 14 or something of '99, within a year of the eviction. But I believe that he should have brought up, he should have done something by maybe April of 1998 or certainly no later than November or some time in 1999. The well went in November or October of '97. So it would have been October or November of '98. Having failed to do this, the court is of the opinion that he did not institute his action within one year, and the court feels that the exception of prescription should be sustained and so rules.
This language implies that La. C.C.P. art. 3658(4) provides for a liberative prescription of one year, and that, since more than one year had elapsed since the April 1997 letter and the commencement of the drilling operations on the property in October or November of 1997, that the objection of prescription was well founded.
In his only assignment of error, Griffin asserts that "(T)he trial court improperly ruled that the appellant's peaceful possession of the property in question was interrupted in either April of 1997 as a result of a letter allegedly sent by the Appellee to the Appellant or in October or November of 1997 by the short term existence of an oil and gas well placed on the property with the permission of the appellant." He contends the trial court erred by finding that these occurrences "created a disturbance sufficient enough to interrupt plaintiff's peaceful possession of the property in question, thereby commencing prescription."
The disturbance sued upon is the eviction letter sent to the plaintiff on January 19, 1998. The plaintiff filed suit on January 14, 1999, within the one year period as required by La. C.C.P. art 3658(4). The possessory action must be instituted within a year of the disturbance. La. C.C.P. art 3658(4). The possessor may suffer disturbances throughout the year *838 preceding the filing of the possessory action, and unless his possession comes to an end in such a way that he cannot show that he was in possession for more than a year prior to the disturbance complained of, he has the right to bring the action within a year of the disturbance. Liner v. Louisiana Land & Exploration Co., 319 So.2d 766, 776 (La.1975). La. C.C.P. 3658(2) does not mean that there must be no adverse claim for a year before the disturbance. Id., at 776. In Mire v. Crowe, 439 So.2d 517 (La.App. 1 Cir.1983), the court stated that Crowe committed a number of trespasses on the property. Crowe may also have conducted several disturbances, each of which would have entitled Mire to bring a possessory action. Id., at 523. However, failure to bring a possessory action timely does not necessarily cause a loss of the right to possess. For a disturbance to cause loss of the right to possess, it must amount to eviction. It must bring home to the actual possessor the realization that his dominion is being seriously challenged, and must last for more than a year. See Yiannopoulos, Possession, 51 La. L.Rev. 523, 545 n. 131 (1991). Although the plaintiff suffered disturbances prior to filing suit, the disturbance sued upon occurred on January 19, 1998, and this possessory action was filed on January 14, 1999 within one year of the disturbance. It was timely. La. C.C.P. art. 3658.
The judgment sustaining the peremptory exception raising the objection of prescription is reversed, and judgment is rendered in favor of Griffin and against Lago overruling the exception.

REMAND
The trial court error in its ruling on the peremptory exception does not require a remand in this case. The exception was heard in conjunction with a trial on the merits, and the record is complete. Because Louisiana appellate courts have jurisdiction over facts in civil cases, a prejudicial error does not necessarily require a remand. La. Const. of 1974, art. V, Sec. 10; La. C.C.P. art. 2164. Because the record is complete, we will make our own de novo review of the record and decide the case. Cf. Evans v. Lungrin, 97-0541, p. 7 (La.2/6/98), 708 So.2d 731, 735; McLean v. Hunter, 495 So.2d 1298 (La.1986).

POSSESSION OF GRIFFIN
To be possessor within the purview of La. C.C.P. art. 3658(1), the person in possession must possess for himself as owner. La. C.C.P. art. 3660; A. Yiannopoulos, 2 La. Civ. Law Treatise Sec. 334, pp. 656-658 (4th ed.2001)

Intent To Possess As Owner
To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. C.C. art. 3424. A person who lacks that intent is no possessor at all. See A. Yiannopoulos, Louisiana Civil Law Treatise § 311, p. 615 (4th ed.2001). To acquire the right to possess, one must combine the intention of possessing as owner with the corporeal detention of the thing. Mire v. Crowe, 439 So.2d at 521. Pitre v. Tenneco Oil Co., 385 So.2d 840, 845 (La. App. 1 Cir.), writ denied, 392 So.2d 678 (La.1980). Inasmuch as the corporeal possession required as a predicate to a possessory action is the same as that required for acquisitive prescription of 30 years, the corporeal possession must be open and notorious and adverse or hostile to the true owner and everyone else. Harper v. Willis, 383 So.2d 1299, 1307 (La.App. 3 Cir.), writ denied, 390 So.2d 202 (La.1980).
The evidence shows the plaintiff never had the requisite intent to possess *839 as owner nor was his possession hostile to the owners. To be an adverse possessor qualified to use the possessory action, the possession of the plaintiff must be such as to reflect his express intent to possess as owner and must be corporeal detention of the property to the exclusion of the record title owners. Armstrong v. Armstrong, 493 So.2d 253, 258 (La.App. 3 Cir.), writ denied, 496 So.2d 353 (La.1986). Some of Griffin's neighbors testified that they did not think he was owner of the property. Members of the Bayou Paul Hunting Club, lessees of the property, confronted and informed Griffin around 1989 that they had a lease on the property. Griffin admitted to the lease by the hunting club members. Griffin made no claim of ownership nor did he attempt to oust the hunter-lessees from the property. Griffin admitted that he never told anyone that he owned or didn't own the property. Lago, and its predecessors in title, exercised numerous acts of possession over the property; Griffin's acts of possession did not exclude them. There must be strong evidence that gives the owner some notice that his property is in jeopardy. Armstrong, 493 So.2d at 259. The evidence of record shows that Lago and its predecessors in title conducted numerous acts of possession over the property, including granting hunting and oil leases, drilling an oil well, mitigation banking and payment of taxes. See Theriot v. LaTerre Co. Inc., 256 So.2d 710 (La.App. 1 Cir.1972).
If Griffin had the requisite intent, he hid it from others, including the defendant. One's possession must not be clandestine or equivocal in order to have legal effect. La. C.C. 3435. If the possessor seeks to hide his acts from those who would have an interest to know, his possession is clandestine. A.Yiannopoulos, 2 Louisiana Civil Law Treatise Section 316, p. 626 (4th ed.2001); La C.C. art 3436. Possession is equivocal when there is ambiguity as to the intent of the possessor to own the thing. La. C.C. art. 3436. Griffin's possession was clandestine and equivocal. Griffin never gave Lago or Denkmann notice of his intent to possess the property for himself. La. C.C. 3439.

Precarious Possession
Possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession. La. C.C. art. 3437. A precarious possessor, such as a lessee, is presumed to possess for another although he may intend to possess for himself. La. C.C. art. 3438. Where there is a disturbance of possession, the possessory action is available to a precarious possessor, such as a lessee, against anyone except the person for whom he possesses. La. C.C. art. 3440. A plaintiff in a possessory action must be one who possesses for himself. Caruthers v. Caruthers, 484 So.2d 750, 752 (La.App. 1 Cir.1986).
In Griffin's original petition he claimed possession of a parcel of land described as follows:
E½ of West portion of W½ of Lot 8, Section 19, Township 9 South, Range 2 East SED, East of the River, containing 22 acres, St. Gabriel, Louisiana, Parish of Iberville.
The plaintiff later amended his petition changing the description of the property to include 36.531 acres.
On May 17, 1995, Griffin entered into a lease agreement with Denkmann, Lago's predecessor in title, which lease provided, in pertinent part, as follows:
THIS LEASE is between Denkmann Associates, a Louisiana partnership ("Lessor") and Aaron C. Griffin ("Tenant"), entered on this May 17, 1995.

1. THE LEASE. In consideration of the mutual covenants that follow, Lessor hereby leases to Tenant the property *840 (the "Leased Premises") bearing municipal address 8150 Hwy. 74, St. Gabriel, LA 70776, measuring approximately 250 feet along Highway 74 with a length of approximately 130 feet, currently occupied by Tenant, shown on Exhibit A hereto, located in Iberville Parish, Louisiana, being a part of the property generally described as follows:
A tract or parcel located in Section 19, Township 9 South, Range 2 East, being the East 22.0 acres of the E/2 of Lot 8 and W/2 of Lot 8, St. Gabriel, Louisiana, Parish of Iberville.
. . .
2. TERM. The term of this Lease (as extended as hereafter provided, the "Term") shall be for one (1) year from its date. This Lease shall automatically renew each year for an additional one (1) year unless Tenant gives Lessor or Lessor gives Tenant notice of termination at least thirty (30) days prior to the end of the Term about to expire, or unless Tenant fails to pay the annual rental.
3. RENTAL. As rental for the Leased Premises during the Term, Tenant agrees to pay Lessor an annual rental of $10.00 payable as follows: upon the signing of this agreement and thereafter fifteen (15) days prior to the expiration date. No monthly rental shall be payable to Landlord attributable to the period prior to the date of this Lease.
4. USE OF THE LEASED PREMISES. The Leased Premises shall be used and occupied only for a residence. Tenant agrees to comply within all laws, ordinances, orders and regulations affecting the Leased Premises and the occupation and use of same.
. . .
7. OWNERSHIP OF IMPROVEMENTS, LEASED PREMISES. A) Tenant, at Tenant's expense, has made improvements to the Leased Premises to make the premises fit for occupancy which improvements shall remain the property of the Tenant. However, any of Tenant's property not removed within fifteen (15) days after the termination of this Lease shall become the property of Lessor although Lessor shall nevertheless have the right to demand that Tenant remove such property at Tenant's expense. Tenant shall not construct any additional improvements closer than ten (10) feet to the perimeter of the Leased Premises.
B) Lessor is the owner of the Leased Premises. Tenant's prior occupation of the Leased Premises has been allowed by Lessor through Lessor's indulgence. Tenant has no ownership of nor right to possess the Leased Premises, or any of Lessor's property (independent of those rights hereunder).

(Emphasis added)
This is the lease that was cancelled by Lago in January of 1998.
The plaintiffs signature is on the lease. At trial he admitted signing the lease but claimed he did not read it. A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending he did not read it, or that it was not explained or that he did not understand it (except in certain limited exceptional cases of which this is not one). Tweedel v. Brasseaux, 433 So.2d 133, 138 (La.1983); Sonnier v. *841 Boudreaux, 95-2127 (La.App. 1 Cir. 5/10/96), 673 So.2d 713, 717; Smith v. Leger, 439 So.2d 1203, 1206 (La.App. 1 Cir. 1983).
Those who acknowledge another as owner cannot acquire legal possession, because their possession is not accompanied by the intention to possess for themselves. La. C.C. art. 3441; Briggs v. Pellerin, 428 So.2d 1087, 1089 (La.App. 1 Cir.1983). By signing the lease, Griffin acknowledged that his house was located on part of a larger tract of land owned by Denkmann and he had no ownership of or right to possess any of the property other than the leased premises. Griffin was a precarious possessor. A precarious possessor commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing. La. C.C. art. 3439. Griffin never did this. To the contrary, Griffin said nothing about his "possession" or "ownership" of the property in question when the April 1997 letter was sent to him. He claimed he never received that letter. Griffin did not claim ownership when Gremillion visited him several weeks after the letter was sent. When Gremillion confronted Griffin about the work on the fence, he stated he did not work on the fence. When the oil well was drilled on the property, Badger Oil Company did not sign a lease with Griffin and he never received any money from the oil lease. Griffin made no objection about this.

Conclusion
The great weight of the evidence shows Griffin failed to prove he possessed the property in question as owner as required by La. C.C.P. art. 3658(1). Accordingly, he is not entitled to a judgment in his favor on the merits.

DECREE
For the foregoing reasons, (1) the judgment of the trial court sustaining the peremptory exception raising the objection of prescription is reversed and judgment is rendered in favor of Griffin and against Lago overruling the exception; and (2) judgment is rendered in favor of Lago and against Griffin on the merits dismissing Griffin's petition with prejudice. Griffin is cast for all trial and appellate court costs.
REVERSED IN PART; RESULT AFFIRMED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.