**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2019 CA 0813**

**JANICE DICKERSON**

**VERSUS**

**AXIALL CORPORATION, AXIALL, LLC, AND
PLANT SECURITY, INC.**

PMc by JEW

**Judgment Rendered:** 'JUL 0 8 2020

* * * * * *

On Appeal from the Eighteenth Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Docket No. 77391

Honorable J. Kevin Kimball, Judge Presiding

* * * * * *

| | |
|---|---|
| Christopher A. Meeks<br>Mandeville, Louisiana | Counsel for Plaintiff/Appellant<br>Janice Dickerson |
| F. Charles Marionneaux<br>David M. Bienvenu, Jr.<br>John Allain Viator<br>Anthony J. Lascaro<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Axiall, LLC and the Improperly Named<br>Axiall Corporation |
| F. Barry Marionneaux<br>Amanda M. Hebert<br>Plaquemine, Louisiana | Counsel for Defendant/Appellee<br>Plant Security, Inc. |

* * * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

JEW

Welch J. concurs without reasons

LH Holdridge J. concur w/ reason

**McCLENDON, J.**

Plaintiff, Ms. Janice Dickerson, appeals a judgment sustaining an exception raising the peremptory objection of prescription and dismissing her possessory action. For the reasons that follow, we reverse the judgment and remand this matter to the trial court for proceedings consistent with our opinion rendered herein.

## FACTUAL AND PROCEDURAL HISTORY

In 1881, a tract of land in Iberville Parish was purchased by an unincorporated association known as the Mount Zion Baptist Association ("MZBA") to serve as a cemetery for former slaves in the Revilletown community ("Revilletown Cemetery" or "the cemetery"). In the late 1960s and early 1970s, a chemical production facility, now owned by Axiall, LLC ("Axiall"), was built on land surrounding the cemetery. Prior to 1988, Axiall's predecessor removed a barbed wire fence that had been erected around the perimeter of the cemetery by members of the Revilletown community, and replaced it with a chain link fence ("cemetery fence"). A second gate and fence were erected around the perimeter of the chemical production facility following the September 11, 2001 terrorist attacks ("perimeter fence"). The present appeal arises from the third lawsuit Ms. Dickerson has been involved in regarding Revilletown Cemetery.

### Dickerson I

The first lawsuit Ms. Dickerson was involved with regarding Revilletown Cemetery ("Dickerson I") was originally brought by MZBA Inc., a non-profit corporation ("MZBA Inc.") incorporated on March 3, 2009, for the purpose of maintaining Revilletown Cemetery. On October 8, 2012, MZBA Inc. filed suit against Mt. Zion Baptist Church # 1 of Revilletown Park ("the Church") alleging that the Church was making unauthorized sales of cemetery burial plots ("unauthorized burials"), and seeking injunctive relief against the alienation, encumbrance, or destruction of any burial plots located in Revilletown Cemetery. **Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church #1 of Revilletown Park**, 2016-0151 (La.App. 1 Cir. 10/31/16), 207 So.3d 414, 415, writ denied, 2016-02109 (La. 2/3/17), 215 So.3d 697. On November 20, 2012, Axiall's predecessor, Georgia Gulf Chemicals & Vinyls, LLC ("Georgia Gulf"), filed a petition for

2

intervention asserting ownership of Revilletown Cemetery and seeking dismissal of MZBA Inc.'s petition for injunctive relief.

On October 3, 2014, Axiall, as successor to Georgia Gulf, together with the Church, filed a motion for summary judgment seeking dismissal of MZBA Inc.'s claims. **Mt. Zion**, 207 So.3d 416. On January 6, 2015, MZBA Inc. filed a supplemental and amending petition which added as additional plaintiffs Janice Dickerson, plaintiff-appellant herein, and Vivian Ann Craig Chiphe, both in their individual capacities and in their representative capacities as "heirs" of a member of MZBA involved in the original acquisition of the cemetery property in 1881. The amending petition also effectively added MZBA as an additional plaintiff. **Mt. Zion**, 207 So.3d 416. In response to the amending petition, Axiall and the Church filed a dilatory exception raising the objection of lack of procedural capacity, arguing that MZBA lacked procedural capacity because it had not filed suit through its president or other authorized representative.

On April 1, 2015, the trial court granted the motion for summary judgment filed by Axiall and the Church. All of MZBA Inc.'s claims were dismissed with prejudice. MZBA Inc. appealed, and this court affirmed the trial court's judgment.[1]

The remaining plaintiffs were then MZBA, Ms. Dickerson, and Ms. Chiphe. On July 21, 2015, the trial court sustained Axiall and the Church's exception of lack of procedural capacity, but gave MZBA an opportunity to amend its petition. MZBA failed to amend. On September 1, 2015, the trial court again sustained the exception of lack of procedural capacity. The trial court executed a written judgment ordering MZBA to amend its petition to include MZBA's president or another representative authorized to institute the lawsuit within sixty days, and providing that the lawsuit would be dismissed with prejudice if the petition was not amended. MZBA likewise appealed the judgment

---

[1] In MZBA Inc.'s appeal, it argued that the trial court erred because in determining: (1) that Axiall was in possession of the Revilletown Cemetery property; and (2) that MZBA Inc. did not own the Revilletown Cemetery property. **Mount Zion Baptist Ass'n v. Mount Zion Baptist Church #1 of Revilletown Park**, 2016-0150 (La.App. 1 Cir. 10/31/16) (unpublished), 2016 WL 6427683 *2. This court found that the trial court had erred in granting summary judgment holding that Axiall was in possession of the Revilletown Cemetery property, because Axiall, as an intervenor, was not entitled to interject new issues into the proceedings. *Id.* at *3. However, this court found that the trial court had correctly held that MZBA Inc. did not own Revilletown Cemetery, because MZBA Inc. had failed to comply with the statutory requirements for a valid transfer of title from the unincorporated association to MZBA Inc., and therefore, could not establish title. Thus, this court vacated the portion of the trial court judgment holding that Axiall was in possession of the Revilletown Cemetery property, denied that portion of the motion for summary judgment requesting such relief, and affirmed the trial court's judgment in all other respects. *Id.* at *4.

sustaining the exception of lack of procedural capacity. On appeal, this court affirmed that portion of the judgment of the trial court sustaining the exception of lack of procedural capacity, amended that portion of the trial court's judgment dismissing the lawsuit with prejudice to provide that the dismissal was without prejudice, and affirmed the judgment as amended. **Mt. Zion**, 207 So.3d at 416-419.

### Cease and Desist Orders

During the pendency of Dickerson I, on November 19, 2015, the Louisiana Cemetery Board ("Cemetery Board"), through the Louisiana Attorney General ("Attorney General"), issued a cease and desist order to the Church pursuant to LSA-R.S. 8:66.2.[2] The November 19, 2015 cease and desist order was directed only to the Church. It was not directed to either Axiall or Revilletown Cemetery, although neither possessed a valid, unsuspended certificate of authority from the Cemetery Board. The Cemetery Board subsequently contacted Axiall by letter dated September 16, 2016, and specified that the November 19, 2015 cease and desist order was not directed at Axiall. The September 16, 2016 letter further stated that the Cemetery Board authorized the single at-need interment of Ms. Earnestine Jackson; that the Attorney General would not pursue any claims of violations of law against Axiall related to Ms. Jackson's interment; and, that Ms. Jackson's burial was not to be taken as a blanket authorization for Axiall to act as a licensed cemetery authority for Revilletown Cemetery beyond that one interment.

Thereafter, the Attorney General acquired credible evidence that interments were possibly ongoing or contemplated at Revilletown Cemetery despite the cease and desist order in effect. Thus, on November 17, 2016, the Attorney General issued a second cease and desist order pursuant to LSA-R.S. 8:66.2, directed to Axiall, and ordered that Axiall immediately cease and desist selling interment rights, cemetery spaces, or conducting openings and closings of cemetery spaces, or allowing interments at Revilletown Cemetery. The November 17, 2016 cease and desist order noted the pending litigation regarding the rights, title, and legal authority to operate Revilletown

---

[2] Under LSA-R.S. 8:66.2 the Attorney General, alone or in conjunction with the Cemetery Board, has authority to issue cease and desist orders to cemeteries when it appears that the Louisiana Cemetery Act, LSA-R.S. 8:1, *et seq.*, has been violated.

Cemetery. The order was therefore placed in effect until the pending litigation regarding legal authority to operate Revilletown Cemetery was resolved, and until the Cemetery Board had issued a valid, subsisting certificate of authority to Axiall, to Revilletown Cemetery, or to another entity.

## Dickerson II

The second lawsuit Ms. Dickerson was involved in regarding Revilletown Cemetery ("Dickerson II") was filed on May 2, 2017. Ms. Dickerson, along with several other descendants and relatives of individuals buried in the Revilletown Cemetery, filed a "Petition for [Temporary Restraining Order], Preliminary and Permanent Injunction" ("petition for injunction") naming several defendants, including Axiall and Plant Security, Inc.[3] The petition for injunction alleged that the defendants had restricted access to Revilletown Cemetery by erecting two fences around the property that were locked at all times. As a result, the Revilletown Cemetery was only accessible during certain hours with permission and with security personnel escorts. The petition for injunction further alleged that Ms. Dickerson and the other plaintiffs had been denied access on Christmas Eve, 2016; when they sought to place flowers on the graves of their deceased loved ones; on Ms. Dickerson's mother's birthday; when they sought to maintain the grounds; and on weekends and holidays. Finally, the petition for injunction alleged that the defendants forced plaintiffs from the cemetery when they had gathered for the funeral of Hazel Jones in November of 2016. Therefore, Ms. Dickerson and the other plaintiffs sought a temporary restraining order and subsequent injunctions prohibiting the defendants from interfering with access to Revilletown Cemetery. At the time this matter was submitted to this court, no hearing had yet been held on the temporary restraining order.

## Dickerson III

On October 31, 2017, Ms. Dickerson filed the third lawsuit she has been involved in regarding Revilletown Cemetery ("Dickerson III"), a possessory action naming as

---

[3] Westlake Chemical OPCO LP, Westlake Chemical OPCO GP LLC, Westlake Chemical Partners GP LLC, and Westlake Chemical Partners LP were also named as defendants.

defendants Axiall Corporation, Axiall, LLC, and Plant Security, Inc. ("Defendants").[4] The instant appeal arises from this possessory action.

In Dickerson III, Ms. Dickerson again raised allegations regarding the funeral of Ms. Hazel Jones. More specifically, Ms. Dickerson asserted that in or around November 2016, the defendants disturbed Ms. Dickerson's use and possession of Revilletown Cemetery by blocking the funeral of Ms. Jones. Ms. Dickerson sought a judgment restoring and maintaining possession of Revilletown Cemetery to her, her relatives, and the Mount Zion Baptist Association, in addition to damages, costs, and legal interest. In response, Defendants filed exceptions raising the peremptory objection of prescription, the peremptory objection of no right of action, and the dilatory objection of lack of procedural capacity. Ms. Dickerson opposed the exceptions, and Defendants filed a reply to her opposition.

The trial court heard the exceptions on December 4, 2018. During the hearing, the trial court stated that the question was "did [Ms. Dickerson] file the [possessory action] within one year of the disturbance of [her]... possession, and I guess my decision, I have to decide what constitutes [her] possession and what constitutes a disturbance."

At the close of the hearing, the trial court stated, in pertinent part:

[B]ased on the testimony, I've heard, there was, in fact, disturbances prior to [the blocking of Ms. Hazel Jones's funeral], and I'll note that I don't know that [Axiall] blocked that as much as the Attorney General with the Cease and Desist.

I think there was testimony that - that -- with [Axiall's] permission granted to [the Church], that appears, to me, to be exercising dominion over the property, both by the granting of the permission to it, which Ms. Dickerson said she knew, as well as burial of people not from [Revilletown], prior to Miss Hazel's funeral being blocked.

...

So, with regard to the reasons I just stated, one the funerals of other folks there, the -- I find that as a disturbance, that weren't from [Revilletown]. [Ms. Dickerson] acknowledged that. The granting of the right to [the Church] to do that, as well as all the other acts over the years of - of the fence and what not.

---

[4] At the hearing of this matter, Plant Security, Inc., specifically adopted all the evidence introduced by Axiall, the arguments of Axiall's counsel, and the testimony elicited by Axiall's counsel for and on behalf of Plant Security, Inc.

Now, I - I question whether the actual fence was intended to exercise dominion over [Revilletown Cemetery] or to protect the Plant. I -- I'm not certain, but I do find that there's been other sufficient disturbances prior to Ms. Jones' -- the blocking of her funeral; which again, I don't know if that was by [Axiall]. I think that was more of the Attorney General and the -- and the [Cemetery Board].

So, for those reasons, as well as the reasons stated in [Defendants'] memos and briefs and their argument, I'm going to grant the Exception of Prescription.

Accordingly, the trial court executed a written judgment on January 2, 2019, sustaining Defendants' exception of prescription, dismissing the possessory action with prejudice, ordering each party to bear their own costs, and denying the remaining exceptions as moot. From this judgment, Ms. Dickerson appeals, alleging that the trial court erred in sustaining the exception of prescription.

## LAW AND DISCUSSION

The concept of possession is neither simple nor precise. **Liner v. Louisiana Land & Expl. Co.**, 319 So.2d 766, 772 (La. 1975). Possession is a matter of fact. LSA-C.C. art. 3422. A person is in possession of immovable property when he has corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good faith or bad faith, or even as a usurper. LSA-C.C.P. art. 3660. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. LSA-C.C. art. 3424. A possessor with title is deemed to have constructive possession within the limits of his title. LSA-C.C. art. 3426. However, a possessor without title has possession only of the area he actually possesses. *Id.* Actual possession must be inch by inch possession, or possession within enclosures. An enclosure is any natural or artificial boundary. LSA-C.C. art. 3426 and comment (d). Once acquired, possession is maintained by the intent to possess as owner, even if the possessor ceases to possess corporeally. This is civil possession. LSA-C.C. art. 3431.

One who has possessed a thing for over a year acquires the right to possess it. LSA-C.C. art. 3422. The term "right to possess" is little more than a shorthand method of saying that one has acquired the right to bring a possessory action. **Todd v. State, Through Dep't of Nat. Res.**, 474 So. 2d 430, 437 (La. 1985). The possessory action

7

is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted. LSA-C.C.P. art. 3655; **Poirrier v. Dale's Dozer Service, Inc.**, 1999-2593 (La.App. 1 Cir.11/3/00), 770 So.2d 531, 535. The elements of proof in a possessory action are set forth in LSA-C.C.P. art. 3658 as follows:

> To maintain the possessory action the possessor must allege and prove that:
>
> (1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
>
> (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
>
> (3) The disturbance was one in fact or in law, as defined in Article 3659; and
>
> (4) The possessory action was instituted within a year of the disturbance.

This court considered an exception of prescription in the context of a possessory action in **Griffin v. Lago Espanol, L.L.C.**, 2000-2544 (La.App. 1 Cir. 2/15/02), 808 So.2d 833. In **Griffin**, the plaintiff began using the property in dispute in 1966. He had no title to the property and paid no taxes on it. *Id.* at 835-36. Griffin's activities on the property included riding a three wheeler and keeping a few items of livestock. Some outbuildings were located on the property. A portion of the property was fenced in, although it was unclear who built the fence and when. Griffin maintained the fence. *Id.* at 836. In May of 1995, Griffin entered into a lease with Lago's predecessor in title. *Id.* at 839. In April of 1997, Lago learned that work was being done on the fence surrounding the property. Accordingly, on April 9, 1997, Lago sent a letter to its lessees who lived adjacent to the property, including Griffin, advising that Lago owned the property and did not authorize the fence. Griffin contended he did not receive this letter. Approximately two weeks later, Lago sent an employee to talk to Griffin about the letter and to confirm work on the fence had stopped. Griffin represented to Lago's employee that he was not the party responsible for the work on the fence and that he made no claim of ownership to the property. Lago's employee observed that the work on the fence had stopped. *Id.* at 836.

In October of 1997, Badger Oil Company, pursuant to a lease agreement with Lago, began drilling operations for oil on the property. Griffin and his neighbors saw the operations. On January 19, 1998, Lago sent Griffin a letter notifying him that the lease on his house and lot was being terminated. Lago also sent Griffin a second letter advising of Lago's ownership, stating that Griffin's cattle operations were not permitted on the property, and demanding that Griffin vacate the property and remove all of his belongings from the premises by January 31, 1998. Griffin filed suit against Lago on January 14, 1999, claiming that Lago had disturbed Griffin's possession of certain property, or evicted Griffin from the property, on January 19, 1998. *Id.* at 836-37. Lago filed an exception of prescription, which the trial court deferred to the trial on the merits and ultimately sustained after trial on the merits. Griffin appealed. *Id.* at 835. On appeal, this court wrote:

> Lago's peremptory exception raising the objection of prescription asserts, in pertinent part, that "even if Griffin was in possession of the tract in question (which Lago denies), Griffin lost such possession by numerous disturbances in both law and fact that occurred during the period of 1966 until his ultimate eviction on January 19, 1998." This language implies that La. C.C.P. art. 3658(2) provides for a liberative prescription of one year and that since there were disturbances of Griffin's possession within one year of the date of the disturbance complained of in the petition, Griffin lost his right of possession.
>
> In his oral reasons for judgment, the trial judge stated the following:
>
> > Having said those things, let me point out that Mr. Griffin was evicted on January 19, I believe, of 1998, and filed suit on January 14 or something of '99, within a year of the eviction. But I believe that he should have brought up, he should have done something by maybe April of 1998 or certainly no later than November or some time in 1999. The well went in November or October of '97. So it would have been October or November of '98. Having failed to do this, the court is of the opinion that he did not institute his action within one year, and the court feels that the exception of prescription should be sustained and so rules.
>
> This language implies that La. C.C.P. art. 3658(4) provides for a liberative prescription of one year, and that, since more than one year had elapsed since the April 1997 letter and the commencement of the drilling operations on the property in October or November of 1997, that the objection of prescription was well founded.
>
> In his only assignment of error, Griffin asserts that "(T)he trial court improperly ruled that the appellant's peaceful possession of the property in question was interrupted in either April of 1997 as a result of a letter allegedly sent by the Appellee to the Appellant or in October or November of 1997 by the short term existence of an oil and gas well placed on the property with the permission of the appellant." He contends the trial court

9

erred by finding that these occurrences "created a disturbance sufficient enough to interrupt plaintiff's peaceful possession of the property in question, thereby commencing prescription."

The disturbance sued upon is the eviction letter sent to the plaintiff on January 19, 1998. The plaintiff filed suit on January 14, 1999, within the one year period as required by La. C.C.P. art 3658(4). The possessory action must be instituted within a year of *the* disturbance. La. C.C.P. art 3658(4). The possessor may suffer disturbances throughout the year preceding the filing of the possessory action, and unless his possession comes to an end in such a way that he cannot show that he was in possession for more than a year *prior to the disturbance complained of,* he has the right to bring the action within a year of *the* disturbance. *Liner v. Louisiana Land & Exploration Co.,* 319 So.2d 766, 776 (La.1975).[5] La. C.C.P. 3658(2) does not mean that there must be no adverse claim for a year before the disturbance. *Id.,* at 776. In *Mire v. Crowe,* 439 So.2d 517 (La.App. 1 Cir.1983), the court stated that Crowe committed a number of trespasses on the property. Crowe may also have conducted several disturbances, each of which would have entitled Mire to bring a possessory action. *Id.,* at 523. However, failure to bring a possessory action timely does not necessarily cause a loss of the right to possess. For a disturbance to cause loss of the right to possess, it must amount to eviction. It must bring home to the actual possessor the realization that his dominion is being seriously challenged, and must last for more than a year. See Yiannopoulos, Possession, 51 La. L.Rev. 523, 545 n. 131 (1991). Although the plaintiff suffered disturbances prior to filing suit, the disturbance sued upon occurred on January 19, 1998, and this possessory action was filed on January 14, 1999 within one year of the disturbance. It was timely. La. C.C.P. art. 3658.

**Griffin**, 808 So.2d at 837-38.

Therefore, the **Griffin** court reversed the judgment sustaining the peremptory exception raising the objection of prescription.[6] **Griffin**, 808 So.2d at 838.

This court's previous opinion in **Griffin** recognizes, and hinges on, a critical distinction between LSA-C.C.P. art. 3658(2) and (4). Louisiana Code of Civil Procedure article 3658 sets forth four elements a possessor must prove in order to maintain his

---

[5] For clarity, we note that this sentence taken from the Supreme Court's analysis in **Liner**, 319 So.2d 766, was part of the discussion of the LSA-C.C.P. art. 3658(2) requirement that one seeking to prevail on a possessory action must allege and prove that he "had such possession quietly and without interruption for more than a year immediately prior to the disturbance." In context, the sentence appeared as follows:

> We must conclude then that the words 'quietly and without interruption' do not mean that a possessor who suffers a 'disturbance' on several occasions in the year preceding the suit has lost his right to bring the possessory action. The possessor may suffer disturbances throughout the year preceding the filing of the possessory action, and unless his possession comes to an end in such a way that he cannot show that he was in possession for more than a year prior to the disturbance complained of, he has the right to bring the action within a year of the disturbance.

**Liner**, 319 So.2d at 776. **Liner** goes on to state, "C.C.P. 3658(2) cannot, without adding a new requirement to the possessory action, be read literally. It cannot mean that there must be no adverse claim for a year before the disturbance." *Id.* Thus, **Liner** also references the required one year of peaceful possession in terms of an alleged possessor's "right to bring the action," and not in terms of prescription.

[6] Because the exception was heard in conjunction with a trial on the merits and the record was therefore complete, this court then proceeded to a *de novo* review of the record, and ultimately determined that Griffin had failed to prove he possessed the property. **Griffin**, 808 So.2d at 838.

possessory action. Louisiana Code of Civil Procedure article 3658(4) sets forth a one-year prescriptive period, and requires that a party file his possessory action within one year of the date of the disturbance of possession complained of therein. **Griffin**, 808 So.2d at 837-38. In contrast, Louisiana Code of Civil Procedure article 3658(2) provides that a party filing a possessory action hold such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud. The Louisiana Supreme Court in **Todd**, 474 So. 2d 430,[7] explained this element of the possessory action as follows:

> It should also be noted that the history of La.Code Civ.Pro.Ann. art. 3658 supports our conclusion that, in connection with the required one year of peaceful possession, prescription is not involved. The source of art. 3658 is art. 49 of the Code of Practice, which in turn corresponds to the 1806 French Code of Civil Procedure art. 23, and the official comment to Article 3658 assures us that no change has occurred in the law with the article's incorporation in the Louisiana Code of Civil Procedure. French commentators have explained that the requirement of one year's actual possession for the availability of the possessory action is an emphasis on continuity, which expresses the quality of possession, and the period takes into account the agricultural cycle of preparation, planting and harvesting. Such a period is no prescriptive right, but a procedural assurance of the fact of undisturbed possession.

**Todd**, 474 So.2d at 437-38 (footnotes omitted).

Thus, LSA-C.C.P. art. 3658(2) does not mean that there must be no adverse claim for a year prior to the disturbance complained of in a possessory action in order for an alleged possessor to bring the possessory action. **Liner**, 319 So.2d at 776; **Griffin**, 808 So.2d at 838. Rather, LSA-C.C.P. art. 3658(2) requires as a procedural element that an alleged possessor demonstrate the continuity, and therefore quality, of the possession alleged, as part of his burden of proof when seeking to maintain his possessory action. This requirement of one year of peaceful possession is not connected to the question of whether the possessory action was timely filed, but whether the possessor is procedurally entitled to maintain his possessory action on the merits. See **Todd**, 474 So.2d at 437-38. This distinction between the one-year

---

[7] As noted in **Side By Side Redevelopment, Inc. v. City of New Orleans**, No. CIV.A. 2009-3860, 2010 WL 3946961, at *5, fn.10 (E.D. La. Oct. 4, 2010), aff'd, 449 F. App'x 399 (5th Cir. 2011), the **Todd** decision "demonstrates how difficult it can be to harness the concept of possession under Louisiana law." **Todd** was decided by the Louisiana Supreme Court three times: first on original hearing, then reversed on rehearing, and reversed a second time on rehearing. Each version of the opinion attempted to definitively explain the contours of possession. However, ultimately, the seven justices on the court at the time failed to agree.

requirements of LSA-C.C.P. art. 3658(2) and (4) has been recognized by both the Third and Fifth Circuit Courts of Appeal. See **Boneno v. Lasseigne**, 534 So.2d 968, 969 (La.App. 5 Cir. 1988) ("Our previous opinion dealt with the prescriptive period enunciated in the Louisiana Code of Civil Procedure Article 3658(4) as it applied to the various defendants, and *not* C.C.P. Art. 3658(2) which mandates one year of peaceful possession and involves a question of a [plaintiff's] procedural right to proceed")(footnote omitted); and see **Hawkins v. Ashuca Co. Inc.,** 1994-506 (La.App. 3 Cir. 12/21/94), 649 So.2d 766, 770, writ denied, 95-0723 (La. 4/28/95), 653 So.2d 598 ("The one (1) year of possession required by law prior to a disturbance in possession is a procedural requirement to maintain the action and not the prescriptive period. The fact that a person may have left his property for over a year does not bar his right to later return to the property, possess it for one (1) year, and assert his right to possess it in a possessory action.").

In this matter, as in **Griffin**, the trial court's judgment sustaining the exception of prescription was based on the court's factual determination that the plaintiff's possession had been disturbed numerous times over a period of many years prior to the institution of the possessory action. However, as this court explained in **Griffin**, LSA-C.C.P. art. 3658(4) requires that the possessory action be instituted within a year of *the disturbance sued upon*. Therefore, the plaintiff's suit is timely when filed within one year of the date of the disturbance sued upon. The disturbance sued upon in this matter is the disruption of Ms. Hazel Jones' funeral in November of 2016. Ms. Dickerson filed her possessory action on October 31, 2017, within one year from the date of the disturbance sued upon, as required by LSA-C.C.P. art 3658(4). Thus, although Ms. Dickerson suffered disturbances prior to filing suit, her possessory action regarding the blocking of the funeral of Ms. Hazel Jones was timely filed.

We note Defendants' reliance on prior jurisprudence in which this court was tasked with determining whether a possessory action was timely filed. Our opinion herein does not conflict with this jurisprudence. In **Vermilion Parish School Board v. Muller,** 92 So.2d 77 (La.App. 1 Cir. 1957), the disturbance sued upon was the construction of a fence. Plaintiffs filed suit more than a year after construction began,

but within a year of when construction was completed. In **Gomilla v. Ralston Purina Company**, 271 So.2d 681 (La.App. 1 Cir. 1972), writ denied, 274 So.2d 391 (La. 1973), the disturbance sued upon was the construction of an oxidation pond. Plaintiffs filed suit more than a year after the defendant cleared the property where the pond was constructed, and, in doing so, removed a fence, but within a year of the completion of the oxidation pond. This court declined to calculate the prescriptive period based on the completion of the fence in **Vermillion** and the completion of the oxidation pond in **Gomilla**, and instead found that prescription began to toll when the disturbances sued upon began. Therefore, the possessory actions in **Vermillion** and **Gomilla** were held to be prescribed. In **Harvey v. Harvey**, 431 So.2d 786 (La.App. 1 Cir. 1983), the disturbance sued upon was the construction of a fence, and plaintiffs filed their suit within a year of same. The possessory action in **Harvey** was thus held to be timely.

In this matter, the issue before this court is, again, whether a plaintiff's possessory action was timely filed. We make this determination based on *the disturbance sued upon*. The disturbance sued upon is the blocking of the funeral of Ms. Hazel Jones. The actions prior to the disturbance sued upon, including the erection of the fences, may properly be considered on the merits of Ms. Dickerson's possessory action, particularly with regard to whether Ms. Dickerson can establish her procedural right to maintain the action by proving peaceful possession as set forth in LSA-C.C.P. art. 3658(2). However, these fences, the unauthorized burials, and the other events on which the trial court based its ruling to grant the exception of prescription are not the disturbance sued upon by Ms. Dickerson. Thus, they are not determinative of this exception of prescription.

The January 2, 2019 judgment sustaining the peremptory exception raising the objection of prescription and dismissing Ms. Dickerson's possessory action with prejudice is reversed. Judgment is rendered in favor of Ms. Dickerson and against Defendants overruling the exception of prescription.[8] See **Griffin**, 808 So.2d at 838. Further, as the exceptions of no right of action and lack of procedural capacity were

---

[8] We note that Ms. Dickerson also argues that the trial court erroneously relied on inadmissible hearsay. Given our ruling herein, we find it unnecessary to address this assignment of error.

13

denied as moot based on the grant of the exception of prescription, the January 2, 2019 judgment is vacated in this regard. We remand this case to the trial court, for proceedings consistent with the opinion rendered herein, including consideration of the exceptions of no right of action and lack of procedural capacity.

## DECREE

For the foregoing reasons, the January 2, 2019 judgment of the trial court is reversed in part and vacated in part. We remand this matter to the trial court for further proceedings consistent with the reasoning expressed herein.

**REVERSED IN PART; VACATED IN PART; AND REMANDED.**

JANICE DICKERSON

VERSUS

AXIALL CORPORATION,
AXIALL, LLC, AND PLANT
SECURITY, INC.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0813



**HOLDRIDGE, J., CONCURRING**

I concur in the result to remand this matter to the trial court for further proceedings. Even though the plaintiff's possession was conceded for the purpose of the objection of prescription, I am unable to determine what type of possession the plaintiff supposedly exercised (over the entire cemetery, over only the cemetery plots, or inch-by-inch over certain property within the cemetery). It is impossible to determine whether the alleged disturbance (the blocking of the funeral of Ms. Hazel Jones) interrupted the peaceful possession of the plaintiff if we are unable to determine what the plaintiff actually possessed. There are a number of questions that must be answered prior to a discussion of prescription, such as what constitutes the possession of a cemetery and what causes that possession to be disturbed. Thus, I agree that the objection of prescription under these circumstances was improvidently granted, and I would remand to the trial court to consider the objections of no right of action and lack of procedural capacity prior to ruling on the prescription objection.